**Corbus v. Corbus**

C.P. of Bucks County, no. A06-04-60943-C-35

*Tina Mazaheri,* for the plaintiff.
*Kevin Handy,* for the defendant.

BALDI, *J.,* February 23, 2010—On December 23, 2009, this court entered an order finding John Corbus in contempt of a court order previously entered by the Honorable Clyde W. Waite on April 6, 2009. Specifically, Mr. Corbus was found in contempt for failing to comply with the court-ordered obligation to provide travel accommodations for Ms. Corbus' family to the United States, so that the Mr. Corbus' and Ms. Corbus' minor children could spend time with Ms. Corbus' family. Mr. Corbus filed a timely notice of appeal on January 21, 2010. On February 5, 2010, the Superior Court designated the appeal as a Children's Fast Track appeal in accordance with the recent amendments to the Pennsylvania Rules of Appellate Procedure. Pursuant to Pa. R.A.P. 1925(a) we file this opinion.

## FACTUAL BACKGROUND

The relevant facts are as follows:[1] The parties involved in the instant dispute are Erika Corbus (Mother), John

---

1. The findings of fact and conclusions of law accompanying Judge Waite's court order dated April 6, 2009 were accepted by this court as

Corbus, (Father) and their two children, Estefania and Sarah Corbus. Mother and Father were married in 1997, and divorced in January of 2009. Mother is a Mexican citizen, and over the period of the parties' marriage, both Mother and Father would travel multiple times each year to Mexico for family visits. See findings of fact, 4/6/09, ¶¶7-9. The parties have a history of profound difficulties relating to travel between Mexico and the United States with their children. Specifically, in the year 2000, while Mother was in Mexico with the children, Father traveled to Mexico and concocted a scheme to take the children back to the United States without Mother's knowledge. *Id.* at ¶12. Father did this by representing to Mother that he was taking the children to the park, when in fact he planned to spirit them away to the United States. *Id.* Father admitted to this conduct; however, he claimed he did so under duress. *Id.*

In addition, when Mother was in Mexico with the children in March 2004, Father contrived the issuance of a custody order from this court through the use of misleading information. *Id.* at ¶16. Father went to Mexico and represented himself as being there for purposes of reconciliation. *Id.* at ¶18. He deceived Mother into thinking the family would be able to set aside their differences and function in a good and wholesome manner. *Id.* As a result, Mother voluntarily agreed to come back to the United States with Father and the children. *Id.*

However, in the Houston Airport, Father sought out a police officer and demanded that Mother be arrested for

---

matters of record and provided the background as set forth above. See court order, 4/6/09.

violation of the custody order that unbeknownst to Mother, he had recently obtained. *Id.* at ¶21. Father manipulated the court proceedings to obtain Mother's declaration as a fugitive by filing petitions during a time when he knew and in fact had taken steps to ensure that Mother could not be present to oppose his assertions. *Id.* at ¶28. Father knew that Mother's status as an alien would cripple her ability to present a defense. *Id.* Father took full and unfair advantage of his position of power and authority to the detriment of Mother and ultimately to the detriment of the children. *Id.* Father's conduct resulted in Mother being arrested in front of her children, being held in jail in Houston for one night, and being subsequently arrested in Philadelphia upon her arrival and criminally charged with interference with custody. *Id.* at ¶¶22, 24-25. Mother ultimately spent 15 days in the Bucks County Correctional Facility, as she had insufficient funds to post bail. In addition, Mother opted to accept Accelerated Rehabilitative Disposition (ARD), for fear that a conviction would negatively affect her immigration status. *Id.* at ¶25.

On February 8, 2005, upon consideration of a custody evaluation which recommended that Mother be granted primary physical custody of the children, the Honorable Judge Fritsch entered an order granting Mother primary physical custody. This decision was affirmed by the Superior Court on July 18, 2006.

The custody order issued by Judge Fritsch restricted Mother's ability to travel with the children. *Id.* at ¶¶34-35. However, after a hearing before Judge Waite on March 10, 2009, Judge Waite found that Mother wished

to be able to travel with the children to Mexico to maintain familial ties both on her part and on the parts of her children. *Id.* at ¶38. Mother's home and her immediate family are in the Monterrey, Mexico area. *Id.* at ¶43. The children likewise expressed a keen interest and desire to maintain connections with the Mexican side of their family, both language-wise and in terms of their heritage. *Id.* at ¶41. Father, however, adamantly believed that in the event the minor children were permitted to travel to Mexico that they would not return.

Judge Waite found that the dangers presented by travel of identifiable U.S. citizens in Mexico and particularly to the Monterrey area were too great to subject the children to those risks, and that alternative measures existed to maintain familial, language and heritage connections via frequent visits by Mother's family to the United States. *Id.* at ¶¶43-44. Judge Waite found that due to Father's employment as a senior pilot with Continental Airlines he had substantial perquisites of employment to both travel himself domestically and internationally and to provide travel opportunities for his nuclear and extended family, gratis. *Id.* at ¶¶9, 44. Because Father possessed the means to provide for the transport of a limited number of persons to the United States on a frequent basis at no cost to him[2] either in cash or other perquisites, Father was ordered to:

"provide either for the transport of three members of Mother's family to the United States three times a year

---

2. At the hearing on October 6, 2009, the court became aware that the travel passes do actually cost Father approximately $200 each way. However, Father did not appeal the April 6, 2009 order, which had accepted as fact that the travel passes were provided free of charge to Father through his employer.

at his personal expense or . . . provide travel passes for those three persons." Court order, 4/6/09, ¶D3.[3]

Father's failure to comply with these court-ordered travel obligations prompted Mother to file a pro se "emergency motion for a contempt hearing." A hearing was held before the undersigned on November 30, 2009.[4] At the hearing, evidence was presented that Mother had informed Father of the proposed travel dates for her family by letter on May 19, 2009; however, Father did not book the flights from Texas to Philadelphia until July 4, 2009, only two days prior to the proposed July 6, 2009 travel date. N.T. 10/6/09, pp. 55-59; 11/30/09, pp. 89-92. Further, Mother testified that she repeatedly attempted to confirm the travel plans with Father, to which Father assured her that he would place the travel reservations. N.T. 10/6/09, pp. 56-57. Not only did Father wait until the weekend of July 6, 2009 to finally confirm that he had purchased the tickets, he also waited until that point to inform Mother that he was only going to purchase tickets from Laredo, Texas to Philadelphia, rather than tickets from Monterrey, Mexico to Philadelphia. N.T. 10/6/09, p. 57. This conduct preliminarily indicates to this court Father's continued lack of cooperation in car-

---

3. In addition, the court found Father in contempt for failure to return the children as required for vacation; for failing to cooperate with Mother in respect to medical care; and for refusing Mother reasonable telephone access with the children when they were with Father. The court imposed sanctions in the amount of $10,000, payable to Mother for her attorney's fees. See order, 4/6/09, ¶D1.

4. At the hearing, testimony from Mother, which had been given at a prior hearing on October 6, 2009 before the Honorable Clyde W. Waite, was entered into evidence by the agreement of the parties. We simply offer this information for the purpose of clarifying the record.

rying out the letter and intent of the April 6, 2009 court order.

Father also admitted at the hearing that the court order required him to bring Mother's family into the United States, but stated that this arrangement was not feasible and could not be accomplished. N.T. 11/30/09, pp. 93-95. By way of explanation, Father testified that he is only able to obtain standard "travel passes" from his employer on domestic flights, and could only obtain international travel passes by actually accompanying Mother's family on the international flight. N.T. 11/30/09, p. 80. Father testified that he was not willing to accompany Mother's family on the flight, and therefore the international travel passes would not be available to him. While Father first stated that he did not want to accompany Mother's family because his work schedule did not allow him to do so, he then stated that he would never be willing to accompany Mother's family on an international flight because he did not feel safe in Mexico, citing concerns about Mother's relatives, crime statistics, drug cartels, and H1N1 outbreaks. N.T. 11/30/09, pp. 80-81. It is for this reason that Father stated that he booked flights for Mother's family from Laredo, Texas to Philadelphia, Pennsylvania. N.T. 11/30/09, pp. 80-82.

Father also failed to make arrangements to transport Mother's family from Monterrey, Mexico to Laredo, Texas. Mother testified that it was unlikely that her family would have even been able to travel into Laredo, Texas on such short notice, due to the fact that her family members would need to acquire "pass travel permits,"

which would have been needed upon entry to the United States.[5] N.T. 10/6/09, pp. 58-59.

In light of the provisions of Judge Waite's order, and the foregoing evidence, this court found that Father had disrespected Judge Waite's order and had engaged in contemptuous behavior. In an effort to carry out the intent of Judge Waite's order to maintain familial ties between the children and their family in Mexico, the undersigned directed that Father place $3,000 in an escrow account for purposes of purchasing transportation tickets for Mother's family members. See court order, 12/23/09.

Father now appeals this finding of contempt and has presented the following issues on appeal, verbatim:

"(1) The trial court erroneously imposed a [sic] open-ended support obligation on Father in a custody matter and, as a result, failed to properly consider the imposition of the financial obligation under the support guidelines.

"(2) The trial court did not have a proper basis for imposing an additional support obligation on Father by requiring Father to purchase airline tickets for Mother's family.

"(3) The trial court's finding of fact, upon which the support obligation is based, is contrary to the law of the case." See statement of matters complained of on appeal, 1/21/10.

We will address these issues in seriatim.

---

5. Mother testified that the particular border her family would have had to cross is a high immigration crossing border, and as such, Mexican citizens who are seeking to enter the United States beyond

## DISCUSSION

Father first asserts that this court imposed an open-ended support obligation by requiring him to provide travel arrangements to Mother's family members. However, our court order was not open-ended, and simply sought to enforce Father's obligation to "provide either for the transport of three members of Mother's family to the United States three times a year at his personal expense or . . . provide travel passes for those three persons," as set forth in the April 6, 2009 court order. Based upon both Mother's and Father's testimony, adequate travel arrangements were never put in place to bring Mother's family "to the United States" so that the children could spend time with her family.

We find Father's testimony as to the unavailability of international travel passes to be credible; however, we find that Father was still fully aware that he had to provide full transportation "to the United States" for Mother's family, whether it was at his personal expense or in the form of a travel pass from his employer. The court order clearly required Father to transport Mother's family members from Mexico to the United States. Father failed to do this by only providing travel accommodations from Texas. Accordingly, we found Father's failure to comply with the transportation of Mother's family from Mexico to the Philadelphia area to be in contempt of the clear and unambiguous language of the April 6, 2009 court order.

---

the immediate border crossing area are required to obtain "pass travel permits," so that they can travel deeper into the United States (*e.g.* Laredo, Texas).

Because Father has refused to accompany Mother's family on the international flights from Mexico, and the travel passes are not otherwise available from Father's employer for international flights, this court entered an order requiring Father to fund an escrow account with $3,000 to allow three of Mother's family members to visit the Philadelphia area, and the children, three times a year. This order was not meant to be punitive; rather, it was put in place so that the provisions of the April 6, 2009 order could be successfully carried out. This obligation was not open-ended; it simply required Father to comply with the previous order and transport three of Mother's family members to this area three times a year.

Appellant's contention that this court failed to properly consider the imposition of the financial obligation under the support guidelines is similarly without merit. Our court order simply enforces a prior court order, and that prior court order, which imposed the original financial obligation, was never appealed by Father. The issue of determining support payments was not before the court to decide on November 30, 2009. Rather, that issue had been litigated previously and was never appealed. The only issue before this court was whether or not Father's conduct was contemptuous, which we found to be the case.

Father next contends that the trial court did not have a proper basis for imposing an additional support obligation upon him. Again, this court did not impose an additional obligation; it simply directed Father to comply with the existing court order which required and continues to require him to pay for the costs of transportation

of Mother's family to the United States three times a year.

Finally, Father maintains that "the trial court's finding of fact, upon which the support obligation is based, is contrary to the law of the case." See concise statement, ¶C. We assume that Father is arguing that our finding of contempt was in error and was contrary to law. Contempt power is "essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Marian Shop Inc. v. Baird,* 448 Pa. Super. 52, 55, 670 A.2d 671, 673 (1996) (citing *Fisher v. Pace,* 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949)). When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. *Id.* (citing *Fenstamaker v. Fenstamaker,* 337 Pa. Super. 410, 487 A.2d 11 (1985)); *Sinaiko v. Sinaiko,* 445 Pa. Super. 56, 63, 664 A.2d 1005, 1009 (1995) (citing *Goodman v. Goodman*, 383 Pa. Super. 374, 556 A.2d 1379 (1989), *appeal denied,* 523 Pa. 642, 565 A.2d 1167 (1989)). On appeal from a court's order holding a party in contempt of court, the Superior Court is "limited to determining whether the trial court committed a clear abuse of discretion." *Id.* (citing *Mueller v. Anderson,* 415 Pa. Super. 458, 460, 609 A.2d 842, 842-43 (1992)).

In *Garr v. Peters,* the Superior Court discussed a court's civil contempt powers and stated that:

"A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to

be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order . . . . To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the order." *Garr v. Peters,* 773 A.2d 183, 189 (Pa. Super. 2001). (citations omitted)

In the instant case, Father himself admitted that he did not obtain transportation for Mother's family from Mexico to the United States. N.T. 11/30/09, 94-95. The court had previously ordered Father to do so. See court order, 4/6/09, ¶D3. This evidence was sufficient to find that Father had violated the court order. This court was not convinced that Father did not have the present ability to comply with the order; Father could have either obtained international travel passes from his employer and accompanied Mother's family on the flight, or he had the option to personally purchase travel arrangements for Mother's family. Therefore, in accordance with the law as set forth in *Garr v. Peters,* we found that Father had violated a court order, and a finding of contempt was appropriate to enable enforcement of that court order. This finding did not constitute an error of law, despite Father's claims to the contrary.

Based upon the foregoing, we find that appellant's issues raised on appeal are without merit.