J-A28029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TRACY ANN STERLING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAI WARD LYMAN | |
| Appellant | No. 2189 EDA 2014 |

Appeal from the Order Entered June 24, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 12-14703
PACSES NO. 664113647

| TRACY ANN STERLING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAI WARD LYMAN | |
| Appellant | No. 3276 EDA 2014 |

Appeal from the Order Entered October 29, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): Nov. Term, 2013; 12-14703
PACSES NO. 664113647

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

JUDGMENT ORDER BY PANELLA, J.          **FILED DECEMBER 29, 2015**

Appellant, Kai W. Lyman, appeals *pro se*[1] from two separate orders, entered on June 24, 2014, and October 29, 2014, in the above-captioned matter. We affirm both orders.[2]

For discussion of the material facts and relevant procedural history, we direct the reader's attention to the opinions of the trial courts. *See* Trial Court Opinion, 1/22/15, at 1-4; Trial Court Opinion, 4/2/15, at 1-8. We have reviewed the briefs of the parties, the certified record, and both trial court opinions. Regarding the June 24, 2014 order, the trial court, the Honorable Holly J. Ford, has authored an opinion that ably disposes of the issues presented on appeal. We affirm based on that opinion. *See* Trial Court Opinion, 1/22/15. Regarding the October 29, 2014 order, the trial court, the Honorable Anne Marie B. Coyle, has authored an opinion that ably disposes of the issue presented on appeal. We affirm based on that opinion. *See* Trial Court Opinion, 4/2/15.

Orders affirmed. Motions denied.

---

[1] Lyman is a licensed attorney in the Commonwealth of Pennsylvania.

[2] Lyman's "Petition to Proceed in Forma Pauperis," filed on September 23, 2015, is denied. Similarly, Lyman's "Motion to Seal" is denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2015

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| KAI LYMAN,<br>       Appellant | : | COURT OF COMMON PLEAS,<br>PHILADELPHIA COUNTY, PA |
| v. | : | IN SUPPORT NO. 664113647 |
| TRACEY STERLING,<br>       Appellee | : | APPEAL NO. 2189 EDA 2014 |

**OPINION**

The parties, Appellant/Obligor, Kai Lyman (hereinafter "Father"), and Appellee/Obligee, Tracey Sterling (hereinafter "Mother"), are the parents of two unemancipated children, Blake Sterling Lyman, age eight (born March 25, 2006) and Vivien Sterling Lyman, age seven (born October 5, 2007). Father appeals from a support order dated June 24, 2014 entered by the Honorable Holly J. Ford which denied Father's support exceptions and made the proposed order entered by Master in Support, William Ketterlinus, Esquire, on April 28, 2014 a final order of court. The June 24, 2014 Order gave rise to the instant appeal.

**Procedural History** *(see docket)*

The present action commenced on November 16, 2012 when Mother filed a divorce complaint that included requests for spousal and child support. The Honorable Kevin Dougherty entered an interim order on April 10, 2013 directing Father to pay $2,609 in support monthly plus $260 monthly toward arrears.

A support master's hearing was held on May 16, 2013 at which the parties reached an agreement, and an order was entered on May 17, 2013 directing Father to pay $2,724 per month

1

R-18a

in child support, $3,976 monthly in alimony *pendente lite* (hereinafter "APL"), and $35 monthly toward arrears.

On August 29, 2013, Father filed an emergency petition for an injunction restraining tactical enforcement from support collection actions. The Honorable Doris Pechkurow entered an order by agreement on September 9, 2013 changing the effective date of the support order from November 13, 2012 to April 10, 2013.

On September 27, 2013, Father filed a petition to modify the child support order. On November 5, 2013, Mother filed a contempt petition and Father filed a petition for modification of the APL order. The Honorable Barbara Joseph dismissed Mother's contempt petition on November 25, 2013. On December 9, 2013 after a pretrial conference, an interim order was entered pursuant to the Pennsylvania support guidelines which recommended that Father pay $1,354.05 monthly as $782 for the support of two children, $448.96 for APL, and $123.09 toward arrears, effective November 5, 2013. Father was also directed to continue providing medical coverage "when and if available at reasonable or no cost." Interim Order, PACSES (Dec. 9, 2013).

Both parties appeared before Master in Support, William Ketterlinus, Esquire, on Father's petition to modify his child support and APL obligations on January 28, 2014.

On February 5, 2014, Father filed a petition for special relief requesting that the reporting of arrears to credit bureaus be prevented. Judge Pechkurow denied Father's petition for special relief on February 24, 2014. On April 10, 2014, Father filed a petition for special relief with respect to Financial Institution Data Match (FIDM).

On April 28, 2014, Master Ketterlinus entered a proposed order of support vacating the interim order entered on December 9, 2013; Father was ordered to pay $2,260.13 monthly for the

2

R-19a

support of the parties' two children, $1,874.45 monthly for APL and $10 monthly toward arrears. Father filed exceptions to the master's report and recommendation (hereinafter "Report", collectively) on May 15, 2014. Also on May 15, 2014 Father filed a petition to vacate and/or stay enforcement of the support order until a final determination on his exceptions was made. On June 10, 2014, Father filed a memorandum in support of his exceptions.

After a hearing on June 11, 2014, the Honorable Joel Johnson granted Father's petition for special relief regarding FIDM and ordered Father's frozen assets to be released. Judge Johnson denied Father's motion to stay enforcement. *See* Order, J. Johnson (June 11, 2014).

On June 24, 2014, Judge Ford entered an order denying Father's exceptions filed May 15, 2014 and making the master's proposed order of April 28, 2014 a final order of court.

Father filed a notice of appeal of this Court's June 24, 2014 Order on July 25, 2014, one day after the 30-day filing period had elapsed, in contravention of Pa. R. A. P. 903(a). The Pennsylvania Superior Court entered an order on August 5, 2014 noting that the appeal appeared untimely and directing Father to show cause within ten days why the appeal should not be quashed.[1] *See* Order, Pa. Super., *per curium* (Aug. 5, 2014). On September 3, 2014, the Superior Court entered an order stating that "only issues regarding the child support portion of the order will be referred to the panel assigned to decide the merits of this appeal." Order, Pa. Super., *per curium* (Sept. 3, 2014).[2]

---

[1] As per the Superior Court docket, on August 15, 2014, Father filed a memorandum in response to the order to show cause. On August 19, 2014, the Superior Court entered an order directing Father to show cause as to the appealability of the spousal support portion of the June 24, 2014 Order. Father filed a memorandum in response to the order to show cause regarding APL on August 29, 2014. *See* Appeal Docket Sheet, Pa. Super., 2189 EDA 2014.
[2] Unfortunately, the trial court did not receive any appeal-related filings subsequent to the August 5, 2014 Order, including the Superior Court's September 3, 2014 Order. An "overdue records" notice was received on or about November 17, 2014 at Philadelphia Family Court's new address, which alerted the trial court to the ongoing appeal. Following a phone call to the Superior Court Prothonotary's Office, the trial court received copies of the missing pleadings and orders on or about November 24, 2014.

3

R-20a

On November 25, 2014, this Court entered an order directing Father to file a statement of errors complained of on appeal (hereinafter "Statement") pursuant to Pa. R. A. P. 1925(b). Father filed his Statement with regard to the June 24, 2014 Order on December 16, 2014.

**Standard of Review**

When reviewing a support order, the Superior Court "may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Sirio v. Sirio*, 951 A.2d 1188, 1192 (Pa. Super. 2008). The trial court is afforded broad discretion in support matters, and its findings will not be disturbed absent an abuse of discretion or insufficient evidence. *Id.*

> An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Id.* at 1193.

**Statement of Law**

As the Pennsylvania Superior Court has repeatedly noted, "[t]he duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." *Sirio*, 951 A.2d at 1192. Pursuant to 23 Pa. C.S. §4321(2), parents are liable for the support of their unemancipated children under the age of eighteen (or unemancipated children who have not yet graduated from high school). The support guidelines, outlined in the Pennsylvania Rules of Civil Procedure, set forth the amount of support for which each parent is responsible based on the net income of both parties. Pa. R. C. P. 1910.16-2. Monthly gross income includes, but is not limited to:

1) wages, salaries, bonuses, fees and commissions;

2) net income from business or dealings in property;

3) interest, rents, royalties, and dividends;

4

R-21a

4) pensions and all forms of retirement;

5) income from an interest in an estate or trust;

6) social security disability benefits, social security retirement benefits, temporary and permanent disability benefits, workers' compensation and unemployment compensation;

7) alimony, if in the discretion of the trier of fact, inclusion of part or all of it is appropriate, and

8) other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa. C. S. § 4302; Pa. R. C. P. 1910.16-2(a). In order to determine each party's net income, the guidelines require that only the following items be deducted from the gross income:

1) federal, state, and local income taxes;

2) F.I.C.A. payments and non-voluntary retirement payments;

3) union dues; and

4) alimony paid to the other party.

Pa. R. C. P. 1910.16-2(c).

The support of a child is a priority obligation, and a party is expected to meet this obligation by adjusting his or her other expenditures. Pa. R. C. P. 1910.16-1(a). There is a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded. Pa. R. C. P. 1910.16-1(d). As the Superior Court has articulated, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v.*

5

R-22a

*Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 551 A.2d 219, 225 (Pa. Super. 1988)).

**Errors Complained of on Appeal**

Father contends that this Court erred in its entry of the June 24, 2014 Order for the following reasons:

1. **The court incorrectly calculated Father's income and earning capacity for purposes of determining support and found no errors of fact or law with the Report.**

As previously discussed, the amount of a support award is generally based upon the parties' monthly net income. Pa. R. C. P. 1910.16-2. However, "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa. R. C. P. 1910.16-2(d)(4).

> Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

*Id.*

Father is and has been an attorney since 1998. Master's Report, W. Ketterlinus, p.5 (Apr. 28, 2014). Following his full-time employment at a law firm for approximately eight years, Father was employed as Senior Director and Senior Counsel of Legal Affairs at Teva Pharmaceuticals USA, Inc. (hereinafter "Teva") until September 23, 2013, when he was involuntarily terminated from this position. *Id.* During his tenure at Teva, Father received a

6

R-23a

salary of approximately $220,000 plus a bonus based on the performance of the business as a whole and his individual performance as an employee. (N.T. p.15, 1.23-24; Master's Report, p.5.) Father provided a 2013 W-2 from Teva and a pay stub dated April 19, 2013, which indicated Father earned gross annual wages for 2013 in the amount of $236,745.58 including a $59,807.25 bonus. Master's Report, p.5.

On September 23, 2013, Teva informed Father that his position with the company had been eliminated and his termination was effective immediately. *Id.* On that date, Teva presented Father with a separation agreement and general release (hereinafter "Settlement Offer"). Under the terms of the Settlement Offer,

> in consideration for [Father's] execution and nonrevocation...and with it [Father's] agreement to release all claims that can be released...and in exchange for [Father's] agreement to abide by the restrictions set forth in the [a]greement, following receipt of [Father's] signed copy...and the expiration of the seven day revocation period, Teva will provide [Father] with the following separation payment and benefits:
> - a lump sum separation payment in the amount of $221,987.30 (less applicable withholdings, such as tax withholdings) which is equal to 12 months of [Father's] gross salary;
> - a prorated 2013 bonus (less applicable deductions) at the time when active Teva employees are paid a 2013 bonus, and subject to the same terms, conditions, and limitations applicable to active Teva employees;
> - continued participation in Teva's health insurance plans (covering eligible dependents who were enrolled in the applicable plan as of the Separation Date), subject to the terms, conditions, and limitations of Cobra, at Teva's sole expense for a period of up to 12 months; and
> - out placement services at Teva's expense.

*Id.* at 5-6. Father refused to sign and effectuate the Settlement Offer and has accordingly not received the aforementioned severance payments. *Id.* at 6. Father was still unemployed at the time of the master's hearing and, in addition to the foregoing, testified that he was receiving

7

R-24a

unemployment compensation benefits in the amount of $571 weekly. *Id.* at 10. He further testified that he has no other income producing assets and no other sources of income. *Id.*

Prior to Father's termination from Teva, Mother was receiving APL and the parties' children were receiving support totaling $6,700 monthly. *Id.* at 7. Following Father's petition to modify based on his employment termination, an interim order was entered in accordance with the guidelines which reduced the combined support obligation to $1,230.96 monthly, which, as the support master noted, "is a mere 18% of the former amount of support received." *Id.*

Master Ketterlinus imputed the income available to Father through the Settlement Offer and, "in consideration of [Father's] age, health, education, employment history and child care responsibilities," found that Father had a gross annual earning capacity of $221,987.30. *Id.* The master declined to include any potential bonus in the gross earning capacity. *Id.* Accordingly, the master found Father's earning capacity constituted a gross annual income of $221,987.30. *Id.*

At the exceptions hearing, Father argued that the Settlement Offer "should not be imputed as income because it was not received." (N.T. p.5, l.23 – p.6, l.3.) The court disagreed, finding no error of fact or law and relying on the reasoning of the master. (*See, generally,* N.T. p.12, l.17 – p.15, l.12.) Contrary to Father's assertion, the court calculated Father's income and earning capacity properly for purposes of determining his child support obligation. For specific discussion as to the imputation of income derived from the Settlement Offer, refer to Father's second argument, *infra.*

2. **The court concluded that the consideration offered and withdrawn by Father's former employer in its Settlement Offer could be imputed as income for support purposes.**

8

R-25a

As previously discussed, under the terms of the Settlement Offer, Father would receive a lump sum payment of $221,987.30 (less applicable withholdings, such as tax withholdings) in exchange for his signature and execution of the agreement.

Support obligations are roughly based on the income of each party and are determined by applying the support guidelines. Pa. R. C. P. 1910.16-2. Pursuant to the Pennsylvania Rules of Civil Procedure governing actions in support, "[m]onthly gross income is ordinarily based upon at least a six-month average of all of a party's income." Pa. R. C. P. 1910.16-2(a). "Income," as defined by the support law, 23 Pa. C. S. A. § 4302, includes (but is not limited to) "other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements; awards and verdicts; and any form of payment due to and collectible by an individual regardless of source." Pa. R. C. P. 1910.16-2(a)(1)-(8); 23 Pa. C. S. A. § 4302. The rule includes a note specifically stating that "[t]he trial court has discretion to determine the most appropriate method for imputing lump sum awards as income for purposes of establishing or modifying the party's support obligation." Pa. R. C. P. 1910.16-2(a)(8).

It is well settled in Pennsylvania that severance payments constitute "income" for purposes of support calculations. *See Berry v. Berry*, 898 A.2d 1100 (Pa. Super. 2006). However, in the case at bar, Father refused to sign and execute the Settlement Offer and therefore did not receive the $221,987.30 payment. While Father testified at the master's hearing and in court that he did not effectuate the Settlement Offer because he did not want to waive his right to bring civil action against Teva regarding his termination, Mother pointed out that Father had not yet instituted any claims or lawsuits against his former employer as of the

9

R-26a

date of the master's hearing. Master's Report, W. Ketterlinus, pp.6-7 (Apr. 28, 2014); (N.T. p.8, 1.24 – p.9, 1.6.)

In finding that the Settlement Offer should be imputed as income to Father, the support master relied on *MacKinley v. Messerschmidt*, 814 A.2d 680 (Pa. Super. 2002), a case in which the Pennsylvania Superior Court held that "once vested, stock options constituted available income that had to be imputed to the parent holding them, for purposes of calculating [that] parent's child support obligation, regardless of whether the parent chose to exercise [said stock options]." Master's Report, p.8. Master Ketterlinus specifically pointed to the following passage from *MacKinley*:

> Child support is a paramount duty of a parent. The principle is so firmly established in our law that a parent's obligation is based on her "earning capacity" rather than her actual income. In an effort to insure that parents attend to the immediate financial needs of their children, courts frequently look beyond the income actually received. *Neil v. Neil*, 731 A.2d 156 (Pa. Super. 1999). In recognition of this overriding concern in the context of child support, a parent who chooses not to take advantage of income available to her is nevertheless deemed to have the capacity for such earnings, which are then included in her income available for support. *Laws v. Laws*, 758 A.2d 1226 (Pa. Super. 2000).

Master's Report, p.8 (quoting *MacKinley v. Messerschmidt*, 814 A.2d 680, P10 (Pa. Super. 2002)). The Superior Court analogized the availability of stock options to employer contributions made to a pension plan and cited *Portugal v. Portugal*, 798 A.2d 246 (Pa. Super. 2002), in which an employer's contributions to a pension plan were held to constitute income for purposes of support "if the employee could access his employer's contributions (regardless of penalties) at the time of the support calculation." *MacKinley*, 814 A.2d at P11 (quoting *Portugal*, 798 A.2d at 253). The *MacKinley* Court further articulated that its holding in *Portugal* was "based on the dominant interest of the children's immediate need, as well as the recognition that children should not be made to wait for support and parents should not be permitted to defer

10

R-27a

income to which they are entitled until they choose to avail themselves of it." 814 A.2d at P11. The court took care to note that while stock options should be included in the support calculation, no party should be forced to exercise said options at any specific time. *Id.* at P13. The Superior Court's holding in *MacKinley* that stock options represent income available for child support was "[b]ased on the statutory definition of income, the holding in *Portugal* and, most importantly, the primary interest of providing for the immediate needs of the children." *Id.* at P14.

In the instant case, the support master accordingly found that Father should not be ordered to sign or effectuate the Settlement Offer. The master found that, "based on the [aforementioned case law] and the totality of the circumstances," the value of the Settlement Offer in the amount of $221,987.30, which represents twelve months of Father's salary (without any applicable bonus) was available to Father and should be included as income for support purposes. Master's Report, W. Ketterlinus, p.9 (Apr. 28, 2014). Master Ketterlinus also found that the prorated bonus portion of the Settlement Offer was too speculative to include in Father's income—a decision which inured to Father's benefit. *Id.* at 9-10.

Father took exception to the master's finding and argued in court that the Settlement Offer should not be imputed as income because, as he refused to sign it, the payment was never received. (N.T. p.5, 1.23 – p.6, 1.3.) The court considered the "tremendous reduction" in Father's support obligation with the entry of the interim order prior to the master's hearing, agreed with the master's comparison of the Settlement Offer to the stock options in *MacKinley* and did not find the master's "reasoning off base as far as a matter of fact or a matter of law." (N.T. p.13, 1.2-11.) In denying Father's exception, the court explained its view of the situation to Father as follows:

11

R-28a

> The master, at least from everything I can tell, has not in any way disrespected your right to exercise any of those options [with respect to choosing whether or not to sign and effectuate the Settlement Offer]. He hasn't said you can't do that. And I haven't said you can't do that. And I don't think [Mother's counsel] is saying you can't do that. But you can't do it to the detriment of your children particularly when you have either the ability to accept something else or other assets that at least contemporary [*sic*] cover it until you figure out what you're doing. And...it's no different than somebody who [is] terminated or wrongfully terminated from a $20,000 a year job or a $30,000 a year job.
>
> [I]f [the master] used your last income he'd come out to 280 [$280,000]. So instead he's saying, "Well look I can't really look at the bonuses, because they are obviously speculative for somebody who has been terminated, but I've got a severance package available," not saying you have to take it, but the children have that money potentially available to them...And I think the master is exactly on point with this and shows what the master should do under the circumstances.

(N.T. p.17, 1.8-21; p.18, 1.5-12; p.19, 1.2-4.) The court found that the monetary value of the Settlement Offer was "available, although not taken," and adopted Master Ketterlinus's reasoning and comparison to the precedent set in *MacKinley*. This Court made no error of fact or law in denying Father's exception as to the imputation of income.

3. **The court allowed evidence that the Settlement Offer was available despite evidence showing it was withdrawn on November 22, 2013, prior to the support master's hearing.**

Under the Pennsylvania Rules of Civil Procedure, "matters not covered by exceptions are deemed waived unless, prior to entry of the final order, leave is granted to file exceptions raising those matters." Pa. R. C. P. 1910.12(f). Father filed exceptions to Master Ketterlinus's Report on May 15, 2014. While he noted that "the consideration [was] offered and withdrawn by Teva in its settlement agreement and general release", neither the availability nor the withdrawal of the Settlement Offer was a point of contention encompassed by Father's exceptions. *See* Defendant Kai W. Lyman's Exceptions to Support Master's Recommendation (May 15, 2014).

12

R-29a

Further, at the exceptions hearing, Father testified that the first deadline for accepting Teva's Settlement Offer was November 7, 2014, which was then extended to November 22, 2014; as the court noted, there was a "natural expiration and not a withdraw [*sic*]." (N.T. p.27, l.9-15; p.29, l.4-15.) Father also testified he had a letter from his employer regarding the issue but acknowledged to the court it was not introduced into evidence at the master's hearing. (N.T. p.28, l.1-8.) This Court accordingly declined to accept evidence that Father failed to present at the master's hearing and made no error of fact or law in doing so.

4. **The court did not recommend findings of fact or conclusions of law regarding Father's actual earning capacity after his termination of employment, his lack of willful efforts to avoid finding employment, and his diligent employment search, which the court found sufficient.**

This Court fails to understand what Father means by asserting that the court did not "recommend" findings of fact or conclusions of law. Nonetheless, the court admittedly found that Father made "substantial efforts to mitigate in the fact that he's trying to get employment. And he's making a pretty decent search for the employment." (N.T. p.20, l.22-25.) However, Father's job search in no way negates the availability of the Settlement Offer nor does it thwart the master's and the court's finding that the Settlement Offer should be imputed as income to Father. With respect to Father's duplicate contention regarding his earning capacity after his termination of employment, see the discussions under Father's first and second arguments, *supra*.

5. **The court refused to admit testimony and/or take judicial notice of the existence of pending administrative claims against Father's former employer after this Court's May 15, 2014 Order.**

Pursuant to the Pennsylvania Rules of Civil Procedure specifically governing support actions, issues not covered by exception to the master's report and recommendation are deemed waived for trial. Pa. R. C. P. 1910.12(f). Similarly, matters not raised in the lower court are

13

R-30a

waived and "cannot be raised for the first time on appeal." Pa. R. App. P. 302. It follows that issues not covered by a party's exceptions may not be argued on appeal.

Father made no mention of pending administrative claims against his former employer in his exceptions filed on May 15, 2014.[3] Accordingly, the issue is effectively waived for purposes of appeal.

**6. The court failed to determine support based upon Father's actual income, assets and/or earning capacity after the termination of his employment, instead relying upon an expired confidential Settlement Offer.**

Father's argument here is redundant. For discussions regarding the court's finding as to Father's income and earning capacity and imputation of the Settlement Offer as income, see Father's first and second arguments, *supra*.

**7. The court failed to consider its prior orders of November 5, 2013 and November 25, 2013 refusing to compel Father's signature of the Settlement Offer before or after its expiration.**

At the exceptions hearing on June 24, 2014, Father testified that the parties appeared before the court on two prior occasions as Mother sought to compel his signature of the Settlement Offer. (N.T. p.5, l.19-23.) As the docket reflects, this Court did not enter a support order on November 5, 2013. On November 25, 2013, the Honorable Barbara Joseph entered an order dismissing Mother's contempt petition as the issue raised was not ripe at that time. *See* Order, J. Joseph (Nov. 25, 2013). Neither the docket nor the November 25, 2013 Order indicates that this Court specifically refused to compel Father's signature of the Settlement Offer as Father asserts.

---

[3] Father mentions for the first time at the end of the June 24, 2014 hearing (and notes in his Statement) that he "commenced administrative claims against Teva." (N.T. p.30, l.9-11.) However, as the court informed Father, such information was "after evidence and cannot be introduced here. It can be introduced in a petition to modify." (N.T. p. 30, l.12-14.)

14

R-31a

In addition to the factual and temporal inaccuracies, Father's contention is irrelevant as his signature of the Settlement Offer was not at issue. The hearing on June 24, 2014 was on Father's exceptions to the master's report and recommendation that stemmed from Father's petitions to reduce child support and APL. As counsel for Mother explained at the exceptions hearing, while the court declined to compel Father's signature to the Settlement Offer at a prior hearing, it also explained that failure to do so would likely result in child and spousal support repercussions. (N.T. p.19, 1.13 – p.20, 1.5.) Furthermore, the record illustrates the court's view that it was Father's prerogative to refrain from signing the Settlement Offer and he should not be judicially forced to do so; however, the value of the Settlement Offer would still be imputed as income. (*See* N.T. p.13, 1.12-17; p.21, 1.5-10; p.17, 1.8-17.) Father's contention is irrelevant to any exceptions that were before this Court on June 24, 2014.

## 8. The court did not consider Father's payment of health insurance premiums in calculating arrears.

At the master's hearing, Father testified that he maintains health insurance that covers himself, Mother and their two children at a cost to him of $1,900 monthly. Master's Report, W. Ketterlinus, p.12 (Apr. 28, 2014). Master Ketterlinus found that because this benefit was included in the Settlement Offer for both parties and the children at no cost, the cost to Father for health insurance should not be included in the support calculations. *Id.*

At the exceptions hearing, Father provided no testimony or evidence to dispute the master's calculation of arrears or to support his claim that the master failed to take into consideration his payment of health insurance premiums. The court therefore relied on Master Ketterlinus's Report and found no error of fact or law.

## 9. The court did not make conclusions of law or findings of fact regarding deviations from the support guidelines.

15

R-32a

Under the Pennsylvania Rules of Civil Procedure, "[i]n deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

1) unusual needs and unusual fixed obligations;

2) other support obligations of the parties;

3) other income in the household;

4) ages of the children;

5) the relative assets and liabilities of the parties;

6) medical expenses not covered by insurance;

7) standard of living of the parties and their children;

8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

9) other relevant and appropriate factors, including the best interests of the child or children."

Pa. R. C. P. 1910.16-5(b). In addition, the rules specifically allow for an "appropriate" downward adjustment" in the obligor's support obligation "[i]f the obligor is occupying the marital residence and the mortgage payment exceeds 25% of the obligor's monthly net income (less any amount of spousal support, APL or child support the obligor is paying)." Pa. R. C. P. 1910.16-6(e).

The parties have two children together, ages eight and seven. At the master's hearing, Father testified that he is currently unemployed and is receiving unemployment compensation benefits in the amount of $571 weekly. Master's Report, W. Ketterlinus, p.10 (Apr. 28, 2014). Father further testified that he has no income producing assets and no additional sources of income. *Id.* The master found that Father's assets include a 1993 Nissan Altima, a checking

16

R-33a

account with a balance of $2,900, a savings account with a balance of $140, and a 401(k) (or similar) plan with a value of $265,000. *Id.*

Father's expenses include a credit card with a balance of $38,000 toward which he pays $600 to $650 monthly, car insurance in the amount of $100 monthly, and cell phone bills in the amount of $100 monthly. *Id.* at 12. Father testified at the master's hearing that he owes family members $8,500 but he is currently not making payments. *Id.*

Master Ketterlinus found that the amounts and types of assets and expenses were not sufficient to deviate from the support guidelines. *Id.* at 11-12. The master also found that, based on the testimony and evidence provided by both parties, the children have 118 overnight visits (less than 40%) with Father annually and an adjustment for substantial or shared physical custody was not warranted. *Id.* at 12.

Father also testified at the master's hearing that he pays a mortgage on the home that was previously occupied by the parties and their children prior to separation in the amount of $3,980.38 monthly (which includes homeowners insurance and real estate taxes.) *Id.* at 11. Master Ketterlinus found that Pa. R. C. P. 1910.16-6(e) was applicable as the monthly mortgage payment made by Father exceeds 25% of Father's monthly net income (less APL and child support) by $2,085.42. *Id.* The master further found that Father's payment of the mortgage "is preserving a marital asset to the benefit of both parties" and that, accordingly, a downward adjustment of $1,042.71 to Father's APL obligation was appropriate and warranted.[4] *Id.*

---

[4] Although Father's APL obligation is not at issue in this appeal by Order of the Superior Court dated September 3, 2014, the court found the downward deviation important to note for purposes of the instant appeal regarding child support.

17

R-34a

At trial, Father provided no testimony that supported a deviation from the child support guidelines nor did he give argument as to why any deviation was warranted. The court properly relied on the findings of the master and declined to deviate from the child support guidelines.

## Conclusion

Ultimately, after hearing testimony from both parties and reviewing the master's report and recommendation, this Court found Master Ketterlinus did not err as a matter of fact or law in entering the proposed order of June 24, 2014 and properly denied Father's exceptions accordingly. The errors of which Father complains on appeal lack any basis in the evidentiary record, applicable statutes or case law. It is respectfully requested that the findings of the trial court be affirmed.

**BY THE COURT:**

**Dated: January 22, 2015**

HOLLY J. FORD,     J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JAN 2 2 2015
FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

18

R-35a

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
FAMILY COURT DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| TRACEY ANN STERLING,<br>Appellee<br><br>VS.<br><br>KAI WARD LYMAN,<br>Appellant | ) NOVEMBER 2012 TERM<br>) NO. 008439<br>) D.R. NO. 12-14703<br>) PASCES NO. 664113647<br>)<br>) CIVIL ACTION<br>)<br>) APPEAL OF ORDER OF CONTEMPT<br>) 3276 EDA 2014 |

## OPINION

### PROCEDURAL HISTORY

The parties, Appellant/Obligor, Kai Ward Lyman, and Appellee/Obligee, Tracey

Sterling, are the biological parents of two unemancipated children who had been born of

the parties' marriage; Blake Sterling Lyman is nine years old having been born on March

25, 2006 and Vivien Sterling Lyman is seven years old having been born on October 5,

2007. Appellant Kai Ward Lyman has filed the instant appeal seeking arrest of judgment

following the imposition of sentence upon him by this Court on October 29, 2014 as a

result of the finding of his civil contempt for refusal to pay his child support obligation

pursuant to Orders of Court.

Procedurally, Appellant had been initially notified of the potential penalties for

his willful noncompliance of the Orders of Support by the Tactical Enforcement Unit of

the Court of Common Pleas of Philadelphia County Domestic Relations Division.

Consistent with the applicable Pennsylvania and local Rules of Civil Procedure, the

1

resulting enforcement conference had been duly scheduled and held with both parties being present or represented on September 29, 2014. Appellant continued to defy the Orders of Support and refused to remedy his flagrant disobedience. Thus, the Conference Officer provided Appellant with due notice and copy of the filed Petition For Contempt, Order of Court and Notice of Hearing scheduled before this Court on October 29, 2014. On October 29, 2014 Appellant appeared pro se and Ann Funge, Esquire appeared as counsel on behalf of Obligee Tracey Sperling to address the underlying merits of the Petition alleging Appellant's Contempt filed by the Tactical Enforcement Unit of the Court of Common Pleas of Philadelphia County Domestic Relations Division.

This Court, after full and fair hearing on October 29, 2014, found Appellant's noncompliance to be deliberate and contemptuous of the existing Temporary Order of Support proposed by Master in Support William Ketterlinus, Esquire which had been entered administratively by the Honorable Kevin Dougherty, then Administrative Judge of the Court of Common Pleas First Judicial District Family Court Domestic Relations Division on April 28, 2014 and the Final Order of Support formally entered on June 24, 2014 by the Honorable Holly S. Ford, Judge of the Court of Common Pleas First Judicial District Family Court Domestic Relations Division.

On October 29, 2014 this Court entered an Order finding Appellant in indirect civil contempt of the Orders of Support and sentencing Appellant to an immediate flat term of incarceration of 120 days and providing the Appellant with notice of the purge factor of $12,000.00. The Appellant met the purge factor by paying the total sum of $12,000.00 in less than eighteen hours of entry of the Contempt Order and Sentence.

2

R-42a

Appellant untimely filed a Motion For Reconsideration of the Order of Contempt on November 14, 2014. Despite the late filing, this Court scheduled an evidentiary hearing on November 26, 2014 and offered the Appellant the opportunity to litigate the Motion For Reconsideration of the subject Order of Contempt entered October 29, 2014. Appellant withdrew the Motion For Reconsideration after this Court duly advised him that successful reconsideration involves opening the entire record concerning the contempt finding. At all hearings, Appellant consistently and voluntarily asserted his right to proceed pro se having identified himself as a licensed practicing attorney in the Commonwealth of Pennsylvania.

On December 1, 2014 a Notice of Appeal was filed by Appellant pro se. Initially this Appeal was incorrectly coded and consolidated with a related appeal of the underlying Orders of Support under Superior Court Appeal No. 2189 EDA 2014. This consolidation has since been rescinded. Thus, on March 4, 2015 this Court directed Appellant to file a 1925(b) Statement of Matters complained Of On Appeal. This Statement was filed on March 24, 2015 containing six enumerated claims of error. A copy was forwarded by mail to this Court on March 31, 2015.

In the instant appellate matter, Appellant repeatedly refers to irrelevant claims and evidence from hearings that were not at issue before this Court. To avoid confusion that is apparently interwoven within Appellant's current Statement of Appeal of this Court's Contempt finding, this Court incorporates, as if set forth in full text, the procedural history of frivolous litigation as outlined succinctly by the Honorable Holly Ford Judge of the Court of Common Pleas in her Opinion filed in the related and initially incorrectly

3

R-43a

consolidated and now separated Superior Court Appeal No. 2189 EDA 2014 as a result of

the related claims concerning the underlying Order of Support as follows:

**Procedural History** (*see docket)*

The present action commenced on November 16, 2012 when Tracey Ann Sterling, hereinafter referred to as "Mother" filed a divorce complaint that included requests for spousal and child support. The Honorable Kevin Dougherty entered an interim order on April 10, 2013 directing Kai Ward Lyman, hereinafter referred to as "Father" to pay $2,609 in support monthly plus $260 monthly toward arrears.

A support master's hearing was held on May 16, 2013 at which the parties reached an agreement, and an order was entered on May 17, 2013 directing Father to pay $2,724 per month for child support, $3,976 monthly in alimony *pendente lite* (hereinafter "APL"), and $35 monthly toward arrears.

On August 29, 2013, Father filed an emergency petition for an injunction restraining tactical enforcement from support collection actions. The Honorable Doris Pechkurow entered an order by agreement on September 9, 2013 changing the effective date of the support order from November 13, 2012 to April 10, 2013.

On September 27, 2013, Father filed a petition to modify the child support order. On November 5, 2013, Mother filed a contempt petition and Father filed a petition for modification of the APL order. The Honorable Barbara Joseph dismissed Mother's contempt petition on November 25, 2013. On December 9, 2013 after a pretrial conference, an interim order was entered pursuant to the Pennsylvania support guidelines which recommended that Father pay $1,354.05 monthly as $782 for the support of two children, $448.96 for APL, and $123.09 toward arrears, effective November 5, 2013. Father was also directed to continue providing medical coverage "when and if available at reasonable or no cost." Interim Order, PACSES (Dec. 9, 2013).
Both parties appeared before Master in Support, William Ketterlinus, Esquire, on Father's petition to modify his child support and APL obligations on January 28, 2014.

On February 5, 2014, Father filed a petition for special relief requesting that the reporting of arrears to credit bureaus be prevented. Judge Pechkurow denied Father's petition for special relief on February 24, 2014. On April 10, 2014, Father filed a petition for special relief with respect to Financial Institution Data Match (FIDM).
On April 28, 2014, Master Ketterlinus entered a proposed order of support vacating the interim order entered on December 9, 2013; Father was ordered to pay $2,260.13 monthly for the support of the parties' two children, $1,874.45 monthly for APL and $10 monthly toward arrears. Father filed exceptions to the master's report and recommendation (hereinafter "Report", collectively) on May 15, 2014. Also on May 15, 2014 Father filed a petition to vacate and/or stay enforcement of the support order until a final determination on his exceptions was made. On June 10, 2014, Father filed a memorandum in support of his exceptions.

After a hearing on June 11, 2014, the Honorable Joel Johnson granted Father's petition for special relief regarding FIDM and ordered Father's frozen assets to be released. Judge Johnson denied Father's motion to stay enforcement. *See* Order, J. Johnson (June 11, 2014).

On June 24, 2014, Judge Ford entered an order denying Father's exceptions filed May 15, 2014 and making the master's proposed order of April 28, 2014 a final order of court.

4

R-44a

Father filed a notice of appeal of this Court's June 24, 2014 Order on July 25, 2014, one day after the 30-day filing period had elapsed, in contravention of Pa. R. A. P. 903(a). The Pennsylvania Superior Court entered an order on August 5, 2014 noting that the appeal appeared untimely and directing Father to show cause within ten days why the appeal should not be quashed.1 *See* Order, Pa. Super., *per curium* (Aug. 5, 2014). On September 3, 2014, the Superior Court entered an order stating that "only issues regarding the child support portion of the order will be referred to the panel assigned to decide the merits of this appeal." Order, Pa. Super., *per curium* (Sept. 3, 2014).2

As per the Superior Court docket, on August 15, 2014, Father filed a memorandum in response to the order to show cause. On August 19, 2014, the Superior Court entered an order directing Father to show cause as to the appeal ability of the spousal support portion of the June 24, 2014 Order. Father filed a memorandum in response to the order to show cause regarding APL on August 29, 2014. *See* Appeal Docket Sheet, Pa. Super., 2189 EDA 2014....

** Unfortunately, the trial court did not receive any appeal-related filings subsequent to the August 5, 2014 Order, including the Superior Court's September 3, 2014 Order. An "overdue records" notice was received on or about November 17, 2014 at Philadelphia Family Court's new address, which alerted the trial court to the ongoing appeal. Following a phone call to the Superior Court Prothonotary's Office, the trial court received copies of the missing pleadings and orders on or about November 24, 2014.

On November 25, 2014, this Court entered an order directing Father to file a statement of errors complained of on appeal (hereinafter "Statement") pursuant to Pa. R. A. P. 1925(b). Father filed his Statement with regard to the June 24, 2014 Order on December 16, 2014."

The sole issue presented for review in the instant Appeal is the validity of the Order of this Court entered on October 29, 2014 by this Court finding Appellant in Civil Contempt for his willful non-compliance and imposing Sentence due to Appellant's violations of the Interim Order of Support previously administratively entered April 28, 2014 by the Honorable Kevin Dougherty and the Final Order entered on June 24, 2014 by the Honorable Holly S. Ford.

All other issues irrelevantly referenced within Appellant's Statement of Matters Complained Of On Appeal shall not be addressed by this Court as they are properly considered by the Honorable Holly S. Ford in her learned opinion and subject to review in the separated pending Appeal before the Superior Court docketed under Appeal No. 2189 EDA 2014. This Court also must dismiss Appellant's reference to the Motion For

5

R-45a

Reconsideration because it was withdrawn before the Court on November 26, 2014 and has not been attached as an incorporated document in the Statement of Matters on Appeal.

As best as this Court can discern from the befuddled Statement of Matters of Appeal, Appellant alleges there was insufficient evidence introduced at the October 29, 2014 hearing to support this Court's finding that he was in contempt of the existing Orders of Support. Intertwined with this argument is his claim that he had been unable to pay the existing Orders of Support. Finally, Appellant asserted that the underlying Interim Order and Final Order of Support did not require compliance because he had filed successive Motions To Modify the existing Orders and an Appeal of the Final Order as well as an Appeal of the denial of his Motions To Modify Orders of Support. Apparently, he had considered his historically relentless filing of motions and appeals as a shield from his obligation to provide any financial support on behalf of his two minor children.

FACTUAL HISTORY

The admitted evidence during the contempt hearing before this trial court on October 29, 2014 revealed that Appellant defiantly ceased paying the monthly existing obligation in direct violation of the Interim and Final Orders of Support which had specifically directed him to pay respective set monthly amounts to Pennsylvania State Collection and Disbursement Unit ("Pa.S.C.D.U.") as assigned to PASCES Account Number 664113647 on behalf of the Appellant's minor children and spouse.

Appellant had been notified that as of September 29, 2014 the accrued arrears resulting from his ongoing non-payment of his support obligations was $21,960.83. On October 29, 2014 when Appellant appeared before this trial court, the delinquency due to

6

R-46a

his non-payment had accrued to $26,295.41. It was undisputed that for approximately eight months, Appellant had paid absolutely nothing toward his ongoing financial obligation on behalf of his two minor children. Instead, he has economically harmed his separated spouse and created undue attorney fees and costs with vexatious litigation aimed at avoiding his parental responsibility.

Evidence established that Appellant had been previously employed as an attorney for Teva Pharmaceutical Company. When his employment ended he had rejected the generous severance package. Instead he chose to engage in litigation concerning his termination with his former employer. In addition, Appellant had been singularly living in the former marital residence which is a five bedroom home in Blue Bell, PA. He had stopped paying the mortgage obligation secured against this home thus forcing it to proceed to a "Short Sale" which had been due to occur sometime after the Contempt hearing on October 29, 2014. Just before he ceased paying his support obligations, Appellant withdrew approximately $70,000.00 from his retirement benefits to pay for unknown expenses. To date, he has never provided a legitimate response to the Court's inquiry as to the use or location of the withdrawn funds.

Appellant reluctantly admitted to possessing two working automobiles that could have been sold to pay his debts. One vehicle he solely owned the title and the other had been "gifted" to him from an aunt. He had inexplicably refused to transfer title to his name from the aunt who, according to this testimony, had "gifted" him this automobile. Appellant rejected all attempts to reasonably satisfy any portion of the delinquent child support obligation.

7

R-47a

Appellant failed to reasonably attempt to obtain employment commensurate with his training and experience. He had remained unemployed until approximately two weeks before the Contempt hearing when he alleged he had obtained a minimum wage job as a retail clerk. This Court specifically found his testimony to be materially incredible particularly as it applied to his claim of inability to pay his child support obligation. Appellant's full payment of the purge factor of $12,000.00 within less than eighteen hours of his imposed sentence of 120 days belied his spurious claim of poverty.

DISCUSSION

Mechanisms for enforcement and contempt of support orders are outlined in 23 Pa.C.S.A. §§§4345, 4348, 4352(d) and Pa. Civil Procedure Rules 1910.20-25. Civil contempt is distinguishable from criminal contempt because the primary purpose of civil contempt is to coerce the contemnor's compliance with a court order, not to punish the offender. Orfield v. Weindel, 52 A.3d 275 (Pa. Super. 2012) (see concurring opinion by Judge Strassburger); Hyle v. Hyle, 868 A.2d 601(Pa. Super. 2005). The dominant purpose of coercion is expressly identified by the Court in the adjudication or order entered by the Court. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the wrongdoer may relieve himself by obeying the Court's order, while a criminal adjudication of contempt punishes with a certain time of imprisonment or a fine which the contemnor is powerless to escape by compliance. Garr v. Peters, 773 A.2d 183 (Pa. Super 2001).

Pennsylvania and local procedural rules specifically permit enforcement of support orders via the Tactical Enforcement Unit and with the use of expedited civil contempt hearings. Pa. Civil Procedure Rule No. 1910.25-5 provides incarceration as a

8

R-48a

remedy for obligors who fail to comply with Orders of Support. Incarceration has been determined to be a reasonably effective means to enforce the support provisions of existing Orders of Support where there has been a finding that the obligor had the present ability to pay the Order. Glynn v. Glynn, 789 A.2d 242 (Pa. Super. 2001) (En Banc); Sinaiko v. Sinaiko, 664 A.2d 1005 (Pa. Super 1995). The confinement is based on a condition that the individual is capable of performing. 23 Pa.C.S.A. §§4344, 4345. As the violator complies, he purges himself of the contempt. Thus, when the contemnor purges the finding of contempt by complying with the purge factor, the appeal is dismissed as moot. Fake v. Fake, (Unpublished Order and Opinion filed October 30, 2007 under Superior Court No. 1069 EDA 2007.)

The contempt power is "essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." Garr v. Peters, 773 A.2d 183 (Pa. Super. 2001); Marian Shop, Inc. v. Baird, 448 Pa. Super. 52, 670 A.2d 1005, 1009 (1995). An Appellate court may only disturb the findings of a trial court if the conclusions are unreasonable in light of the trial court's factual findings. Commonwealth v. Baker, 564 Pa. 465, 721 A.2d 328 (2001), Mrozek v. James, 780 A.2d 670 (Pa. Super 2001), Sargent v. Sargent, 733 A.2d 640 (Pa. Super. 1999); Karis v. Karis, 518 Pa. 601, 544 A.2d 1328, 1332 (1988), Fenstamaker v. Fenstamaker, 337 Pa. Super. 410, 487 A.2d 11 (1985). The reviewing court shall not reverse or modify a final decree unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been capricious disbelief of credible evidence. C. R. by Dunn v. The Travelers, 426 Pa. Super. 92, 626 A.2d 588, 592 (1993).

9

R-49a

In a civil contempt proceeding, the complaining party has the burden to prove by a preponderance of evidence that the opposing party has violated the court order. Childress v. Biogosian, 12 A.3d 448 (Pa. Super. 2011); Hyle v. Hyle, 868 A.2d 601 (Pa. Super. 2005); Chrysczanavicz v. Chrysczanavicz, 796 A.2d 366 (Pa. Super. 2001); Sinaiko v. Sinaiko, 445 Pa. Super 56, 664 A.2d 1005 (1995); Barrett v. Barrett, 470 Pa. 253, 264, 368 A.2d 616, 621(1977). In the instant matter, the procedural rules were followed to the letter. The burden of proof by a preponderance of the evidence had been abundantly met by the Appellee. The record reflects that Appellant readily acknowledged he had not paid any amount toward his delinquent child support obligation in about eight months.

Appellant's ability to pay the obligation pursuant to the terms of the existing Orders of Support was readily apparent. Appellant disclosed that he had unilateral withdrew $70,000.00 from his retirement funds immediately preceding the eight months of zero contribution toward his children's financial support. During this period, he testified that he had stopped paying the secured mortgage obligation of the home that he had owned with his separated wife and in which he had remained living. Appellant's nonpayment of the mortgage triggered the pending "Short Sale" of the five bedroom residence. Appellant failed to identify any significant expenses on the record that could have justified his non-payment. He rejected the notion that he should at least transfer title to at least one of his two possessed automobiles to satisfy the delinquency. Appellant rebuffed all available remedies to his non-compliance.

Appellant unabashedly and repeatedly argued that he need not comply with the Orders of Support because he disagreed with their underlying validity. This systematic

10

form of intentional defiance of Court Orders is particularly egregious given Appellant's level of education and licensing as an attorney within the Commonwealth of Pennsylvania. Evidence from the October 29, 2014 hearing was more than amply supportive of this Court's finding that Appellant's contemptuously violated the Orders of Suuport.

This Court's sentencing of Appellant effectively coerced his immediate compliance consistent with the primary purpose of the Civil Contempt Order. Within eighteen hours of entry of the Order Appellant met the identified "purge factor" by paying the entire amount of $12,000.00 in one lump sum. This total was approximately equivalent to one-half of the delinquent arrears owed due to Appellant's eight months of zero payments. Thus, Appellant soundly confirmed that he had indeed possessed the immediate financial capability to pay his obligation the day before his payment. After demonstrating Appellant's willful non-compliance despite having financial ability to comply by paying the "purge factor" the instant Appeal should be dismissed.

CONCLUSION

In summary, review of the entire record reveals no harmful, prejudicial, or reversible error. Since there is nothing to justify the granting of Appellant's request for relief, the judgment of the trial court should be affirmed.

By The Court,

DATE: April 2, 2015

Anne Marie B. Coyle, J.

11

R-51a