664 A.2d 1005

**Peter SINAIKO, Appellant,**

v.

**Patricia SINAIKO, Appellee.**

Superior Court of Pennsylvania.

Argued June 28, 1995.

Filed Aug. 24, 1995.

58

Joel W. Todd, Philadelphia, for appellant.

Gene E.K. Prather, Philadelphia, for appellee.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

HUDOCK, Judge:

Peter Sinaiko (Husband) appeals from the order of court which held him in civil contempt for failure to abide by the February 18, 1994 order of court directing him to pay $39,-936.00 in counsel fees to his former wife, Patricia Sinaiko (Wife). The court ordered Husband to immediately pay the counsel fees or spend fourteen days in the Bucks County prison. We affirm.

The parties in this case were married on July 29, 1965. In 1990 the parties separated and consented to a divorce. In an effort to equitably distribute the marital property and provide for the support of their children after the divorce, the parties executed a property settlement agreement on October 1, 1990. This agreement was subsequently incorporated but not merged into a final decree in divorce on October 5, 1990. Husband refused to abide by the terms of the agreement thus forcing Wife to file contempt petitions on November 14, 1990, January 22, 1991, May 23, 1991, and December 16, 1991. On May 6, 1992, the court held Husband in contempt of court for failure to pay $41,000.00 he owed Wife for his son's law school expenses. Wife reduced the judgment against Husband and attempted to execute against Husband's Porsche. To avoid attachment of his Porsche, Husband agreed to resolve the dispute and pay the amount Wife demanded. The parties eventually resolved all outstanding financial issues except for the payment of Wife's counsel fees. Wife sought counsel fees from Husband pursuant to the terms of paragraph seventeen of the property settlement agreement which provided that a party who failed to comply with the terms of the agreement would be liable for the legal expenses incurred by the non-breaching party when enforcing the agreement.

After five hearings with the court on the issue of counsel fees, the parties failed to reach an agreement. Wife filed a petition for counsel fees on August 19, 1992. After a hearing on February 18, 1994, the court ordered Husband to pay

$39,936.00 in counsel fees to Wife within 120 days. Husband filed an untimely appeal from this order which was quashed by this Court. Husband continued to ignore the court order and refused to pay Wife counsel fees. On June 23, 1994, Wife had the order reduced to a judgment against Husband. Wife made two attempts to satisfy the judgment against Husband. Initially Wife attempted to execute against Husband's Porsche. Husband, however, had changed the title of the automobile into a joint one between himself and his new wife, thus frustrating Wife's attempts to attach the Porsche. Wife then attempted to garnish reimbursements from Blue Cross/Blue Shield which were due to Husband's medical profession. Again Wife was unsuccessful in satisfying the judgment since the disbursements from Blue Cross were only payable to Husband's professional corporation.

Wife then filed an emergency petition for contempt, payment of counsel fees and supplementary relief in aid of execution pursuant to Pa.R.C.P. 3118, 42 Pa.C.S.A. In the emergency petition Wife's counsel requested that Husband's stock in his professional medical corporation be transferred to Wife until the judgment was satisfied, or in the alternative, that Husband be found in contempt of court and jailed for failure to comply with the court's order. Husband filed a response to Wife's emergency petition in which he claimed that he was financially unable to pay the counsel fees. Husband claimed that his personal income had substantially declined over the past few years and that he had no liquid assets to transfer to Wife. The trial court conducted a hearing on Wife's petition on December 9, 1994. The court determined that Wife was not entitled to hold stock in Husband's professional corporation because she was not a licensed physician. After hearing testimony from Husband regarding his financial status, the court concluded that Husband had the present ability to pay Wife the $39,936.00 in counsel fees. Specifically, the Court stated:

I find you are in contempt. I find your prior financial information shows that you had more than sufficient ability to pay the $40,000; in other words, the $39,936.

The financial information you have provided today to sustain—to try and sustain your point that you don't have the present financial ability is woefully inadequate. The 1040 you provided doesn't show where that $36,000 went. You don't have the corporate return.

\* \* \* \* \* \*

I have your testimony that you are making a lot less money. And I have incomplete documents which are of little weight to back that up. So I find that you have the present ability to pay.

In addition, you have the ability to pay from monies that you have testified you have taken out of your pension fund to pay other obligations. You are paying a $2,800-a-month mortgage. All of these factors combined with which I will enumerate in more detail if necessary at some future point (sic).

So, I find that you're remanded to the Bucks County Prison for a period of fourteen days. You may be purged upon the payment of $39,936.

N.T., 12/9/94, at pp. 107–08. After the court issued this order, Husband was removed from the courtroom in handcuffs and taken directly to the Bucks County prison.

On December 13, 1994, Husband filed an emergency petition for reconsideration of the December 9, 1994 order and an application for stay pending appeal. Husband requested the court to immediately release him from the Bucks County prison and allow him to practice medicine. Husband claimed that the court exceeded its statutory powers by imposing a punitive sanction of imprisonment in a civil proceeding. Husband also claimed that the court abused its discretion by incarcerating him for non-payment of counsel fees. Finally, Husband argued that Wife failed to prove that he willfully disregarded the court's order to pay counsel fees.

The court denied Husband's petition to reconsider the December 9, 1994 order; however, the trial court directed that Husband be granted work release during the weekdays so that he may attend to his scheduled patients. Husband filed a

timely notice of appeal to this Court and a motion for stay of the incarceration on December 15, 1994. This Court issued a per curiam order on December 16, 1994 directing that Husband be released from prison and be permitted to resume his medical practice on the condition that he pay Wife's counsel $1,000.00 immediately and $1,000.00 per month thereafter until the entire balance of counsel fees was paid.

On appeal Husband raises four issues for our review:

I. Did the lower court abuse its discretion by disregarding evidence of Husband's present inability to pay and by ordering Husband to liquidate his pension contrary to the provisions of Federal Statutory law?

II. Did the lower court abuse its discretion when Husband was jailed at 5:00 p.m. on Friday, December 9, 1994 under circumstances where the real purpose was to punish Husband?

III. Did the lower court commit an error of law by jailing Husband without statutory authority to do so under the Domestic Relations Code?

IV. Did the lower court commit an error of law when it jailed Husband for breach of a contract contrary to the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Pennsylvania Constitution?

Husband's Brief, at p. 3.

Husband's first issue on appeal is whether the trial court abused its discretion when incarcerating him for failure to comply with the court's order of February 18, 1994. When a party appeals a court's order holding them in contempt of court, our review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion. *Mueller v. Anderson,* 415 Pa.Super. 458, 460, 609 A.2d 842, 842–43 (1992). This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. *Goodman v. Goodman,* 383 Pa.Super. 374, 398–99, 556 A.2d 1379, 1391 (1989).

■ "The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution." *Colbert v. Gunning*, 368 Pa.Super. 28, 30, 533 A.2d 471, 472 (1987). The court may order civil or criminal contempt.

The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity to purge himself before imposition of punishment, the contempt order is civil in nature. If the purpose of the order is to punish despite an opportunity to purge, the order is criminal in nature.

*Id.*

■ A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. *Id.* A party must have violated a court order to be found in civil contempt. *Goodman*, 556 A.2d at 1391. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. *C.R. by the Guardian of her Estate, Dunn v. The Travelers*, 426 Pa.Super. 92, 99–100, 626 A.2d 588, 592 (1993). However, a showing of non-compliance is not sufficient in itself to prove contempt. *Wetzel v. Suchanek*, 373 Pa.Super. 458, 460–62, 541 A.2d 761, 762 (1988). "If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court order, contempt is not proven." *Id.* (emphasis in original). The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court order. *Commonwealth ex rel. Ermel v. Ermel*, 322 Pa.Super. 400, 402–03, 469 A.2d 682, 683 (1983). A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. *Crozer–Chester Medical Center v. Moran*, 522 Pa. 124, 131–33, 560 A.2d 133, 137 (1989). To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the

present ability to comply with the order. *Wetzel*, 541 A.2d at 764.

In Husband's first two questions presented he alleges that the trial court abused its discretion when it held him in contempt of court since he did not have the present ability to comply with the order of February 18, 1994 by paying nearly $40,000.00 in counsel fees. Husband argues that the court ignored evidence that proved he lacked the financial resources to comply with the February 18, 1994 order. Husband contends that the court in effect imposed criminal contempt since its main purpose was to punish him for his non-compliance.

██ We disagree that the trial court abused its discretion by finding Husband in contempt of court for failing to comply with the February 18, 1994 order of court. The trial court found that Husband failed to meet his burden of proving that he lacked the financial means to pay Wife's counsel fees. According to his own testimony Husband's assets and sources of income included: (1) personal income of nearly $160,000.00; (2) a $2,000.00 in interest, dividends and partnership income; (3) a one-half interest in a GMC Jimmy vehicle; (4) a house worth approximately $315,000.00; (5) variable bonds worth an unspecified amount; (6) a condominium where his professional medical corporation operates; and (7) approximately $30,-000.00 in pension and profit sharing plans. Based on the combination of these assets, as well as Husband's failure to provide complete and adequate records detailing his expenses and liabilities, the trial court's determination that Husband had the present ability to pay was not an abuse of discretion. Husband could have avoided the finding of contempt by arranging to pay Wife the money she was entitled to under the terms of the separation agreement. Husband had nearly ten months to comply with the terms of the February 18, 1994 order and arrange a suitable payment plan with Wife. Instead, Husband ignored the order and told Wife that he would never comply with the trial court's order. Husband admitted at the December 9, 1994 hearing that he made no attempt to contact Wife between February 18, 1994 and December 9, 1994 to discuss a suitable payment plan. Husband also admit-

ted that he made no attempt to refinance, sell or liquidate any assets in order to meet his obligation to Wife. Under these circumstances it is clear that Husband did not make a good faith attempt to comply with the court's order. *Wetzel*, 541 A.2d at 762.

Husband challenges the court's determination that he had the **present ability** to pay the counsel fees. Husband claims that the court imposed an unreasonable condition which could not be met at 5:00 p.m. on a Friday afternoon when he had no access to any funds since all banks were closed. Husband ignores the fact that he had ten months to comply with the court's order directing him to pay the counsel fees. Husband would not have been held in contempt if he had made a good faith effort to comply with the court's order prior to Friday, December 9, 1994 at 5:00 p.m.

Next, Husband argues that the court violated the Employee Retirement Income Security Act (ERISA), amended by the Retirement Equity Act of 1984 (REA), 29 U.S.C.A. section 1056(d), when it allegedly attempted to force a liquidation of his pension. At the December 9, 1994 hearing on Wife's petition for contempt, the trial court inquired as to whether Husband had funds in a pension plan. Husband admitted that he had a pension plan and a separate profit-sharing plan worth approximately $30,000.00. Husband also acknowledged that he had previously withdrawn money from these pension funds in order to pay his son's school tuition and other obligations to Wife. Based on this testimony, as well as other evidence regarding Husband's financial capabilities, the trial court found that Husband failed to prove his inability to financially comply with the terms of the February 18, 1994 order. As support for its decision the trial court stated, "In addition, you have the ability to pay from moneys that you have testified you have taken out of your pension fund to pay other obligations." N.T., 12/9/94, at p. 107. Husband alleges that the trial court may not force him to liquidate his pension funds to comply with the February 18, 1994 order without violating section 1056(d) of ERISA. Section 1056(d) provides:

**(d) Assignment or alienation of plan benefits**

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

29 U.S.C.A. § 1056(d)(1). This statute, which immunizes an employee's pension plan from garnishment and attachment, was enacted to protect an employee from his own financial improvidence in dealing with third parties. *Stinner v. Stinner*, 520 Pa. 374, 382–84, 554 A.2d 45, 49 (1989), *cert. den.*, 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 591 (1989).

▪ We do not find it necessary to address the merits of Husband's argument that the trial court violated the alienation clause of ERISA since the court did not order Husband to liquidate his pension. The trial court inquired as to whether Husband had funds available in a pension plan and asked if he had ever used these funds to pay his obligations under the support agreement to Wife. We are not presented with the issue of whether the trial court may attach Husband's pension plan in order to satisfy the February 18, 1994 order. The court did not issue a writ of execution attaching his pension funds. *Compare Hollman v. Hollman*, 515 Pa. 288, 528 A.2d 146 (1987).[1] The Court was merely trying to obtain a complete understanding of Husband's financial assets and liabilities in order to determine whether he had the present ability to comply with the court's order by paying Wife $39,936.00 in counsel fees.

Furthermore, the Court did not rely exclusively on the $30,000.00 available in Husband's pension and profit-sharing

---

1. Even if the Court had attached the funds in Husband's pension plan, it is uncertain if this order would violate the anti-alienation clause of ERISA based on several decisions of this Court and our Supreme Court which rejected a similar argument. *See Graham v. Graham*, 396 Pa.Super. 166, 578 A.2d 459 (1990) (state employee's pension was subject to attachment through a qualified domestic relations order (QDRO)); *Hollman, supra* (pension payments of former spouse could be attached to satisfy judgment of arrearages under a support agreement); *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984), *rev'd on other grounds*, 378 Pa.Super. 474, 549 A.2d 155 (1988) (pension and profit-sharing plans are garnishable for the purpose of fulfilling the husband's support obligations under a consent decree); *Commonwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979) (ERISA qualified pension plan was not immune from attachment to pay for the support of a participant's family).

plan to support its finding that Husband had the present ability to comply with the February 18, 1994 order. In addition to the money available from the pension plans, the court relied on Husband's personal and corporate income, as well as his variable bonds, expensive house, condominium, and automobile.

 Husband also claims that the court was not authorized to impose a prison sentence as a sanction for civil contempt. He cites this Court's *en banc* decision, *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988), for the proposition that a court may not impose confinement for failure to abide by the terms of a separation agreement which is incorporated but not merged into a divorce decree.

In *Sonder* the parties entered a marital property settlement agreement **on November 28, 1973** which provided that the husband would pay $800.00 per week for child and spousal support to his wife. Subsequently the court entered a decree in divorce which incorporated the terms of the settlement agreement. The parties specifically provided in the settlement agreement that it was not to be merged with the divorce decree.

This Court certified the case for an *en banc* review to determine the precise issue of whether a property settlement agreement executed pursuant to a divorce, which was incorporated into a divorce decree but not merged, is subject to modification by the court as an alimony or support order entered through the court. *Id.* 398 A.2d at 158. A second issue in that case was whether the trial court erred when it held the husband in contempt and ordered him to pay $10,-000.00 "forthwith" or commitment to jail for ninety days. The husband argued that incarceration was not an appropriate sanction for failure to comply with a support agreement.

The majority of the Court agreed with the husband and held that even if the husband had willfully failed to pay the support order when he had the present ability to do so, "the order could not be enforced by an attachment of the person of appellant." *Id.* 398 A.2d at 171. The majority explained:

We, therefore, hold that any agreement which speaks of incorporation but rejects merger was intended by the parties not to be brought under the provisions of sections 401, 501(e) and (f) and 503[2] for the enforcement of separation agreements. Only by an Order which does not reject merger, or requires court enforcement of the agreement, does it become part of the decree and have the effect of an Order. By renouncing merger and failing to have language in the decree requiring enforcement as a court Order, the contract survives. In doing so, the parties reject the benefit of the provisions developed under the Divorce Code and the divorce procedures enunciated in the Civil Procedural Rules for contempt, attachment and payment of alimony on divorce.

*Id.* 398 A.2d at 165.

The majority continued:

[E]nforcement cannot be pursuant to attachment of the person, as permitted by properly merged agreements, under current law. . . . It, therefore, is governed by contract law; breach creates a "debt", debts may not be enforced by jailing under the Pennsylvania Constitution and statutes, *supra*. . . . Thus the enforcement provisions for failure to comply with an agreement, not merged into a support Order or divorce decree, are those available in any other civil action, at law or in equity for payment of money-judgments and execution or attachment of property.

*Id.* 398 A.2d at 173.

We do not agree with Husband that the decision in *Sonder* controls the present case. Husband overlooks the fact that the majority in *Sonder* did not apply the 1988 amendments to the Divorce Code which specifically authorize the incarceration of a party for failure to comply with the terms of a separation agreement. In *Sonder* the parties executed their separation agreement prior to 1988 and were thus not bound by the terms of the amendments. *See Sonder,* 549 A.2d at 183 n. 2

2. Those sections are now found at 23 Pa.C.S.A. sections 3502, 3701, and 3703, respectively.

(Judge Beck in her concurring and dissenting opinion acknowledges that the 1988 amendments were not applied to resolve the appeal since neither party argued that the amendments should be retroactively applied). Sections 3105(a) and 3502(e) of the Divorce Code [3] specifically authorize the trial court to order commitment of the person for a period of less than six months. Section 3105 provides in pertinent part:

## § 3105 Effect of agreement between parties

(a) **Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a).

Section 3502 of the Divorce Code delineates the powers of the court when a party fails to comply with the terms of an order of equitable distribution or with the terms of a private agreement between the parties. That section specifically provides:

(e) **Powers of the court.**—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

\* \* \* \* \* \*

(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court

---

**3.** These sections were originally enacted on February 12, 1988 and codified at 23 Pa.C.S.A. sections 401.1 and 401 of the Divorce Code. On December 19, 1990, the Divorce Code was repealed and replaced by Part IV of the Domestic Relations Code. Section 3105(a) and section 3502(e) of the Domestic Relations Code contain the exact language as sections 401.1 and 401 as written in the 1988 amendments.

order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months[.]

23 Pa.C.S.A. § 3502(e)(6).

Unlike the parties in *Sonder,* Husband and Wife in the present appeal executed their property settlement agreement in October of 1990 when the 1988 amendments were in effect.[4] Therefore, the trial court properly applied the enforcement provisions and imposed a lawful term of incarceration.

We find our Supreme Court's decision in *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977), controlling. In *Barrett* the trial court imposed a conditional sentence of imprisonment in order to coerce the appellant into paying $500.00 arrearages in child support. Prior to issuing that order the trial court conducted an evidentiary hearing to determine if the appellant willfully failed to comply with the court's support order and if he was capable of complying with such order. Only after finding that the appellant could have paid the support obligations did the trial court find him in civil contempt and sentence him to conditional incarceration. *Id.* 261, 368 A.2d at 620.

On appeal, the appellant claimed that he should not have been imprisoned for civil contempt. This Court modified the order of the trial court by limiting the term of appellant's imprisonment if he failed to purge himself, but otherwise affirmed the trial court's order. *See Barrett,* 259, 368 A.2d at 619. Our Supreme Court rejected the appellant's argument that he should not have been held in contempt but agreed that the sentence of imprisonment was improper under the circumstances. The Supreme Court explained its analysis as follows:

It is plain, therefore, that in determining whether Barrett was properly imprisoned for civil contempt, the crucial

4. Neither party in this appeal raised the issue of whether the 1988 or 1990 amendments governed their case. Since the language is verbatim in both versions, we need not address that issue.

question is not whether he willfully and contemptuously violated the original orders, but whether he had the present ability to comply with the conditions set by the court for purging himself of his contempt.

*Id.* 262, 368 A.2d at 620. The Supreme Court then held:

We now hold, however, that where, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced *beyond a reasonable doubt*, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Id.* 263–264, 368 A.2d at 621 (emphasis in original).

Applying the test set forth above, the Supreme Court found insufficient evidence that Barrett had the present ability to comply with the conditions set by the court for purging himself. *Id.* 267, 368 A.2d at 623.

In the present case, Wife initially filed a petition in equity seeking to specifically enforce the provisions of paragraph seventeen of the separation agreement which obligated Husband to pay her counsel fees. The court then conducted a hearing on February 18, 1994 on the issue of counsel fees. After this evidentiary hearing, the court issued its order directing Husband to pay $39,936.00 in counsel fees to Wife. When Husband failed to comply with this order and Wife was unable to satisfy the judgment by attaching Husband's personal property, Wife was forced to file an emergency petition for contempt. The trial court then conducted a hearing on December 9, 1994 where Husband was given ample opportunity to prove that he was unable to comply with the terms of the February 18, 1994 order. After concluding that Husband did have the financial ability to comply, the court followed the dictates enunciated in *Barrett* and imposed a conditional sentence of incarceration which Husband could purge himself of

by paying Wife the $39,936.00 in counsel fees. Unlike the appellant in *Barrett,* we find sufficient evidence to support the trial court's determination that Husband had the present ability to comply with the conditions for purging himself.

Husband raises an additional argument challenging his fourteen day incarceration. He claims that the trial court violated sections 4132 and 4133 of the Judicial Code. These sections provide:

### § 4132 Attachment and summary punishment for contempts

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

### § 4133 Commitment or fine for contempt

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.

We do not find that these statutes apply to Husband's case. These statutes apply when a party is in direct criminal contempt of court; that is when a party engages in misconduct in the presence of the court with the intent to obstruct the judicial proceeding which actually obstructs the administration of justice. *In Re Adams,* 435 Pa.Super. 202, 204–06, 645 A.2d 269, 271 (1994), *alloc. den.,* 539 Pa. 686, 653 A.2d 1225 (1995). *See Bruzzi v. Bruzzi,* 332 Pa.Super. 346, 353–55, 481 A.2d 648, 652 (1984) ("[D]irect criminal contempt

74

consists of misconduct of a person in the presence of the court or so near thereto to interfere with its immediate business[.]"). In the present case, the trial court imposed a term of incarceration as a sanction for Husband's civil contempt premised on Husband's failure to abide by the February 18, 1994 order of court. The court was not imposing summary punishment for Husband's misconduct committed in the presence of the court. As such, sections 4132 and 4133 do not apply.

 Finally, Husband argues that the court's order imposing fourteen days incarceration violates the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. Husband also contends that the court violated Article 1, Section 16 of the Pennsylvania Constitution which provides:

### § 16 Insolvent Debtors

The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law.

PA. CONST. art. 1, § 16.

We reject Husband's argument. Husband was found in civil contempt, not criminal contempt, after the court gave him notice and an opportunity to be heard. The court conducted an evidentiary hearing where Husband was given the opportunity to present his defense to Wife's contempt petition. Likewise, Husband was not jailed for failing to pay a debt contrary to the provisions of the Pennsylvania Constitution. Husband was sentenced to a conditional term of imprisonment as a coercive sentence for civil contempt based on his failure to abide by a court order. The court order was entered after the court found that Husband was obligated to comply with the terms of the separation agreement he voluntarily entered into with Wife. As stated earlier, the trial court acted within its statutory authority under the terms of the Divorce Code when it sentenced him to fourteen days in prison. Wife is more than just a creditor as that term is used in the Constitutions. Husband's debt to her arose as a result of a court order—not

just a private agreement between the parties. The court had the power to enforce its order by means of contempt and incarceration.

Order affirmed.