J-A23022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| L.T. | |
| Appellee | No. 1870 WDA 2015 |

Appeal from the Order Entered November 3, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No: FD 07-003697-004

| J.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| L.T. | |
| Appellee | No. 2002 WDA 2015 |

Appeal from the Order Entered December 18, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No: FD 07-003697-004

| J.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| L.T. | |
| Appellee | No. 456 WDA 2016 |

Appeal from the Order Entered March 30, 2016
In the Court of Common Pleas of Allegheny County

J-A23022-16

BEFORE: LAZARUS, STABILE, and STRASSBURGER, [*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 21, 2017**

Appellant, J.R. ("Father"), appeals *pro se* from the orders of court entered in the Court of Common Pleas of Allegheny County ("trial court") on November 3, 2015, December 18, 2015, and March 30, 2016, following contempt proceedings. Upon review, we affirm.

A panel of this court has previously summarized the parties' factual situation.

> J.R., Jr., was born out of wedlock during April 2007 of Mother and Father's relationship. Since his birth, J.R., Jr. either resided with Mother alone or with Mother and Father in an intact family. For the first three years of their son's life, Mother maintained primary physical custody and Father exercised periods of partial custody under an informal arrangement. On July 27, 2010, Father filed a custody complaint seeking primary physical custody. On the same date, he seized J.R., Jr. under the guise of a pre-arranged custody exchange. He refused to return the child to Mother unless she reconsidered her objection to rekindling their romantic relationship. Mother countered Father's actions by contemporaneously filing a counterclaim for primary physical custody and sole legal custody and an emergency petition for relief pursuant to Pa.R.C.P. 1915.13, seeking the immediate return of her son. On August 10, 2010, the trial court entered an interim order directing J.R., Jr.'s immediate return to Mother's physical custody. That order awarded Father four hours of supervised physical custody per week.
>
> A subsequent order extended Father's periods of physical custody to alternating weekends, and on January 3, 2011, the parties entered an interim consent agreement whereby they

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

shared physical custody on an alternating weekly basis. Since then, the parties have litigated yearly custody or contempt-related issues.

*J.R. v. L.T.*, 391 WDA 2015, 495 WDA 2015, unpublished memorandum at 2-3 (Pa. Super. filed December 30, 2015). Following a custody trial in February 2015, the trial court made findings of fact and entered a custody order on March 24, 2015. Following the entry of this order, Father filed numerous petitions seeking to find Mother in contempt.

> In May 2015, Father brought a petition for contempt alleging that Mother breached the March custody order. [The trial court] set the matter before the hearing officer. However, Father continued to bring similar petitions alleging Mother's noncompliance. [The trial court] consolidated these allegations with the previous petition, and granted Father the ability to present to the hearing officer evidence of any and every example of noncompliance which he felt substantially impaired his custodial rights. Hearing Officer Valles heard the case on August 26, 2015. Hearing Officer Valles determined that Mother was in contempt for her minor noncompliance, but that she could purge her contempt by strictly complying with the custody order. She determined that no further sanction was appropriate. At argument, [the trial court] agreed and dismissed Father's Exceptions.

Trial Court Opinion, 1/21/2016, at 1-2 (citations omitted). Father filed a notice of appeal on November 23, 2015.[1] After the trial court directed Father's compliance with Pa.R.A.P. 1925(b), Father filed a concise statement on December 8, 2015. The trial court issued a Pa.R.A.P. 1925(a) Opinion on January 21, 2016.

_____

[1] This appeal is docketed at 1870 WDA 2015.

Subsequently, Father continued to file numerous petitions with the trial court, which lead to a second appeal.[2]

The roots of the latest conflict stemmed first from of [(sic)] a temporary protection from abuse order, obtained by Mother against Father, and then from the non-PFA Consent Agreement they agreed to in lieu of a final hearing on the matter. Mother sought protection after Father went to Mother's place of employment to confront her. [The trial court] had previously noted Father's history of stalking and harassing Mother in its 495 WDA 2015 opinion (relating to [the trial court's] legal custody award). On October 8, [2015,] the parties entered into a consent agreement outlining, among other things, the appropriate terms for communication. The Consent Order also reserved Mother's right to re-petition the [trial court] for a PFA upon Father's violation. The [trial court] draws attention to the last paragraph of the Consent Order, which provides the times of the child's therapy appointment and exchanges of custody. Part of the conflict arose from the fact that Mother works at the facility where the child receives treatment, and where custody is sometimes exchanged. Paragraph 12 sought to minimize any potential conflict by adjusting the time of the custody exchange until Mother could adjust the time of the appointment. Father signed the agreement.

On November 3, 2015, Father brought a Petition for Special Relief to [the trial court's] very next motions day following the signing of the Consent Agreement. At motions court, Father argued he signed the Consent in a panic and under duress. He argued he did not receive notice of the final PFA hearing until the day before, and therefore could not hire counsel in time. [FN3]. He alleged that the temporary PFA had caused him to lose "sleep due to the stress caused by the sudden realization that he was to appear in court the following morning." Finally, Father alleged dirty tricks. He argued that Mother (or the [trial court]) purposely listed the temporary PFA under a new different docket number to trip Father up. He alleged that he first heard of the temporary PFA when he

_____

[2] This appeal is docketed at 2002 WDA 2015.

received a solicitation from an attorney seeking to represent him. Father would have [the trial court] believe he was still sleep deprived and too stressed to know what he was signing. Curiously, the relief Father officially requested was not an undoing of the Consent agreement, but rather an order forcing Mother to send all legal correspondence via USPS Priority Mail. However, he did articulate that he felt the whole matter should be reconsidered. [The trial court] denied his requested relief.

On December 4, Father brought a nearly identical motion, titled "Petition For Special Relief – Custody" alleging the same duress, lack of notice, and docket number foul play when he officially asked for the undoing of the Non-PFA Consent as well as an expungement of the temporary PFA. Like his previous motion, Father requested a redo. Mother's counsel conveyed to the [trial court] that the only reason she did not request counsel fees for Father's repetitive conduct was because their office could not draft an answer and new matter in time. [The trial court] denied Father's requested relief, but cautioned him that it would enter an order for attorney's fees if Father presented another frivolous motion regarding the temporary PFA or the Non-PFA Consent Agreement.

On December 18, [2015,] Father brought a "Petition for Contempt – Custody." This time, Father alleged Mother had not yet changed the child's therapy appointment to allow the custody schedule to return to normal – from 2:15 p.m. back to 3:00 p.m. – per Paragraph 12 of the October 8, 2015 Non-PFA Consent Agreement. Paragraph 12 provides: "Without establishing *status quo*, on a temporary basis, the parent receiving the child shall pick up the child on Fridays at 2:15 P.M. The parties acknowledge that this custody order is up on appeal [405 WDA 2015]. Once the child's speech therapy appointment can be changed to a different date and time, the parties shall revert to Fridays at 3:00 P.M. or after school exchange time." At motions argument, Mother provided documentation that she had told Father she changed the child's therapy appointment ten days earlier. And yet, Father still brought her to [c]ourt. [The trial court] denied Father's petition to schedule a contempt hearing on the matter, but granted Mother's request for attorney's fees.

[FN3] The [trial court] notes that Father has routinely proceeded without counsel throughout the history of this case. He has

- 5 -

forgone representation since August 2014.  This has not stopped his extensive litigation, however.  Father is not without means to hire counsel, nor is he unfamiliar with [the trial court] or its process.

Trial Court Opinion, 2/22/2016, at 2-5 (citations and footnotes omitted). Father filed a notice of appeal on December 23, 2015.  Following Father's compliance with Rule 1925(b), the trial court issued a Rule 1925(a) opinion on February 22, 2016.

Father's third appeal[3] stems from the March 15, 2016 order, denying Father's petition to find Mother in contempt for violating the March 2015 custody order.

Father presented a Petition for Special Relief-Custody on October 6, 2015.  The pleading was not titled "Petition for Contempt," but in any event contained allegations that Mother was not complying with the custody order.  [The trial court] set the matter before Hearing Officer Valles on December 8, 2015.  On December 18, [2015,] the hearing officer released her findings. She found two violating incidents: one which Mother removed the child early from school; another where Mother failed to return the Father's telephone call.  However, the hearing officer recommended no sanctions or punishment.  Mother was found to be not in contempt of the other violations: 1) that she failed to respond to every single message from Father on the Our Family Wizard computer program; 2) that she failed to inform Father that she traveled out of country with the child; and 3) failing to inform Father that she signed the child up for basketball.  Father filed exceptions.  At argument, the [trial court] dismissed Father's exceptions. [FN2].

[FN2]  The [trial court] went further than Hearing Officer Valles, finding that Mother was not in contempt at all.

---

[3] This appeal is docketed at 456 WDA 2016.

Trial Court Opinion, 6/1/2016, at 2. On March 30, 2016, Father filed a notice of appeal. Following Father's compliance with Rule 1925(b), the trial court entered an opinion on June 1, 2016. On July 19, 2016, this Court consolidated Father's appeals docketed at 1870 WDA 2015, 2002 WDA 2015, and 456 WDA 2016.

Over the three above captioned cases, Father raises six total issues. Father's first four issues are in the consolidated docket 1870 WDA 2015 and 2002 WDA 2015, which we quote verbatim.

1. Did the [trial court] err in dismissing [Father's] Exceptions to the Hearing Officer's Recommendations pursuant to 23 Pa.C.S.A. § 5323.g[.]

2. Did the [trial court] err in dismissing [Father's] Exceptions without explanation[.]

3. Did the [trial court] err in denying [Father's] Petition for a Contempt Hearing so that evidence and witness testimony could be heard regarding [Mother's] Contempt of the Court Order as it relates to adhering to State Statute/Law as specified in 23 Pa.C.S.A. §5323.g and following Case Law set by the Superior Court of Pennsylvania[.]

4. Did the [trial court] err in accepting and signing [Mother's] purposed Order attached to a copy of [Mother's] Response and New Matters which had not been filed/placed on the docket including certificate of service and served to [Father] by [Mother] prior to the hearing as well as the refusing to allow [Father] the opportunity to review and respond to the document regarding Local Rule 208.3(a)[.]

Father's Brief at 3-4 (sic). Father raises two additional issues in docket 456 WDA 2016, which we quote verbatim.

[5.] Did the [trial court] err in dismissing [Father's] Exceptions to the Hearing Officer's Recommendations pursuant to 23 Pa.C.S.A. § 5323.g[.]

[6.] Did the [trial court] err in dismissing [Father's] Exceptions without explanation?

Fathers Brief at 2 (sic).

Father's first issue is that the trial court abused its discretion when it found Mother in contempt on November 3, 2015, but failed to impose any sanctions other than directing Mother to strictly comply with all orders of court in this matter. Essentially, Father is arguing that the trial court was too lenient with Mother. Our standard of review of a court order holding a party in contempt is whether the trial court committed a clear abuse of discretion. *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations omitted). Moreover,

> [e]ach court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge.

*Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa. Super. 2009) (citation omitted). Our custody statutes provide that

> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $500.

- 8 -

(iii)    Probation for a period of not more than six months.

(iv)    An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v)     Counsel fees and costs.

23 Pa.C.S.A. § 5323(g).

As was the case in Father's previous contempt proceedings, he cites to **Harcar** for the proposition that the trial court abused its discretion by not imposing sanctions after a finding of contempt. Father's Brief at 9. However, the instant matter is eminently distinguishable. In **Harcar**, a panel of this Court found that the trial court abused its discretion when it failed to impose sanctions on a mother who flagrantly disregarded a custody order. **Harcar**, 982 A.2d at 1240. In that case, the trial court allowed mother to travel with the child to the Republic of Turkey for the summer but was required to return in August; however the mother failed to return with the child for over 18 months. **Id.**

In the matter *sub judice*, the trial court found Mother in contempt for failing to give Father notice of their son's enrollment in bible camp from June 8 until June 12, for failing to use Our Family Wizard for a month, and for failing to facilitate phone calls during a specific period of time. The trial court found that these were technical violations of the custody order; however, Father had incurred no harm. Furthermore, the trial court noted that

it did not see it necessary to 'reverse' the hearing officer to eliminate the technical contempt findings when the end result would be identical. Although these technical contempt findings come without punishment, they are helpful to put Mother on notice that any sort of trickery or playing dumb with [the trial court's] orders will not be tolerated.

Trial Court Opinion, 1/21/2016, at 6. Upon review, we find that the trial court did not abuse its discretion when it found that no further sanctions were necessary given the marginal nature of Mother's noncompliance and the lack of harm. Father's argument fails.

Next we will address Father's claims that the trial court did not provide an explanation when it dismissed Father's exceptions in the orders of November 3, 2015, and March 30, 2016.[4] Father attempted to raise this exact issue in his previous appeal. A panel of this Court addressed this issue in Father's appeal in docket 494 WDA 2015. *See J.R. v. L.T.*, 494 WDA 2015, 1/22/2016 (unpublished memorandum), at 11-12. As was the case in that matter, Father fails to develop his argument or proffer any legal authority for his proposition that the trial court was obligated to explain its reasoning. Furthermore, the trial court in its Rule 1925(a) opinions cogently explained its reasoning for dismissing Father's exceptions. *See* Trial Court Opinion, 1/21/2016, at 5-6; Trial Court Opinion, 2/22/2016, at 6-9; Trial Court Opinion, 6/1/2016, at 5-7. Father's claims fail.

_____

[4] As the issues are identical we will address Father's second and sixth issues together.

Father's third issue is that the trial court denied his request for a hearing on the contempt petition filed on December 8, 2015. Father fails to develop this argument and therefore, the issue is waived. Even if this argument were not waived, it is meritless as Father is not entitled to a hearing if his petition does not make a *prima facie* case that Mother was in contempt. Father asserted that Mother was in contempt for failing to reschedule the child's speech therapy appointment; however, there was no order requiring her to do so. ***See Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001) ("A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of the evidence that a party violated a court order.") (quoting ***Sinaiko v. Sinaiko***, 664 A.2d 1005, 1009-10 (Pa. Super 1995). Father's claim fails.

Father's fourth issue is that the trial court should not have granted Mother's request for attorney's fees following the denial of his December 8, 2015 contempt petition because of a number of procedural defects related to service and filing of the pleading. Father fails to develop this argument in his brief; therefore, the claim is waived. Even if the claim were not waived, it is meritless. Mother's answer and new matter was presented to the trial court during the hearing on December 18, 2015, and had been previously served on Father. ***See*** N.T. Hearing, 12/18/2015, at 6. Father's fourth claim fails.

- 11 -

Father's fifth issue, similar to his first issue, is that the trial court erred when it failed to sanction Mother's conduct and dismissed his exceptions to the recommendation of the hearing officer on March 15, 2016. Father fails to recognize that the trial court could not enter sanctions against Mother as it did not find her in contempt. As discussed above, we review a contempt ruling for an abuse of discretion. *Garr*, 773 A.2d at 189.

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*P.H.D. v. R.R.D.*, 56 A.3d 702, 706 n. 7 (Pa. Super. 2012) (citing *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006)).

Father's petition alleges two purported instances of Mother's contempt, 1) that she removed the child from school earlier because Mother was getting married that day; and 2) Mother failed to have the child return a scheduled phone call. Upon review, the trial court found that Mother did not act with the requisite wrongful intent to be held in contempt. Mother believed she had the authority to take the child out of school early and admitted missing Father's phone call. There was nothing in the record establishing that Mother acted with wrongful intent; therefore, Father's fifth claim fails.

Finally, we address Mother's request for sanctions. Pursuant to our appellate rules,

- 12 -

[i]n addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including

      (1) a reasonable counsel fee and

      (2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

The instant matter encompasses Father's eighth appeal since March 2015, includes frivolous issues which this Court previously addressed, fails to develop his arguments, and fails to cite to proper legal authority. The trial court described Father's conduct as cyclical. We agree.

Father will bring an action for contempt alleging Mother violated the custody order. The [trial court] sets the matter before the hearing officer. The case would then matriculate from the hearing officer to [the trial court] via the filing of exceptions. Upon [the trial court's] dismissal of Father's exceptions, he would appeal. Soon thereafter he would bring another contempt petition alleging another instance of noncompliance. [The trial court] would then be obligated, though not necessarily inclined, to reset the process, relisting the matter upon Father's well-pleaded petition for contempt. [The trial court] has been persuaded to relist the case especially when Mother failed to appear for the motion. But the result would be the same. Father's petitions would fall just shy of frivolous, rendering transparent his motivations.

Trial Court Opinion, 6/1/2016, at 1-2. Upon review of the record, we find that Father's appeals are frivolous, dilatory, obdurate, and vexatious and his abuse of legal process is unwarranted. *See* Pa.R.A.P. 2744. Therefore, we

- 13 -

award a reasonable counsel fee to Mother. The matter will be remanded to the trial court for further proceedings to determine a reasonable counsel fee.

Orders affirmed. Remanded for further proceedings in accordance with the forgoing memorandum. Applications to dismiss denied. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2017