J-S22008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT L. BAER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNA P. BAER | : | No. 145 MDA 2021 |

Appeal from the Order Entered January 4, 2021
In the Court of Common Pleas of Mifflin County
Civil Division at No(s): 2001-01983

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED: NOVEMBER 19, 2021**

Robert Baer ("Husband") appeals from an order entered by the Mifflin County Court of Common Pleas on January 4, 2021, which denied his petition for special relief and termination of alimony. The court ordered Husband to pay alimony to Donna Baer ("Wife") and maintain a life insurance policy with Wife as the sole beneficiary in accordance with the order entered by the Mifflin County Court of Common Pleas on July 20, 2004. We affirm.

Husband and Wife were divorced by decree in 2002. In the decree, the trial court retained jurisdiction of all economic claims raised by the parties. On July 20, 2004, the trial court entered an order, upon agreement of Wife and Husband and stipulation by their counsel of record, that resolved all economic

_____

[*] Retired Senior Judge assigned to the Superior Court.

issues raised in the divorce action ("2004 order"). Pursuant to that order, Husband was to pay Wife $2,000 per month in alimony and to purchase and maintain a $250,000 life insurance policy naming Wife as the sole beneficiary. *See* Order, 7/20/04, at ℙ 6, ℙ 7. The order specifically directed that Husband was to do both until either Husband or Wife died. *See id*. Husband purchased a ten-year term life insurance policy in 2005, but did not renew the policy when it ended in 2015.

In January 2018, Wife filed a contempt petition alleging that Husband had failed to maintain the life insurance policy in accordance with the 2004 order. The court entered an order on April 27, 2018, finding Husband in contempt and requiring him to maintain a $250,000 life insurance policy as directed by the 2004 order. The order also directed Husband to provide Wife with a $250,000 mortgage secured by several rental properties owned by Husband to ensure Wife's interests were maintained pending resolution of the matter.

Wife then filed another petition for contempt alleging Husband had failed to record a mortgage in accordance with the April 27, 2018 order. The court ordered Husband to follow the April 27, 2018 order. Husband finally recorded a mortgage in accordance with the April 27, 2018 order on August 8, 2019.

Meanwhile, several petitions for contempt were filed against Husband regarding his failure to pay alimony in accordance with the 2004 order.[1] On January 11, 2019, the court found Husband in contempt for failure to pay alimony as previously ordered. The court deferred sentencing, and directed Husband that he could be purged of the contempt finding if he paid a $4,000 lump sum payment as well as the payment for the next month, February 2019, in full. On February 22, 2019, the court entered an order cancelling sentencing as Husband had paid the purge. However, on August 1, 2019, the court once again found Husband in contempt for failure to pay Wife alimony. The order again deferred sentencing and this time, informed Husband that he could purge himself of the contempt finding if he paid a lump sum of $12,000. The trial court subsequently entered an order cancelling sentencing as Husband had paid the purge.

On October 25, 2019, Husband filed a petition for special relief and termination of alimony, seeking to terminate his obligations to pay alimony and to maintain a $250,000 life insurance policy in accordance with the 2004 order. He contended in the petition that he was no longer financially able to pay the alimony and could not afford the life insurance policy due to changed circumstances, namely his retirement and multiple health issues that he had encountered.

_____

[1] These petitions are not in the certified record. However, Husband does not dispute that they were filed. *See* Appellant's Brief at 9-11.

The court held a hearing on the petition on January 3, 2020. Husband and Wife's daughters both testified about the many medical issues Husband, who was 77 at the time of the hearing, had faced in the past several years, including heart bypass surgery, knee and hip replacements, and back surgery. *See* N.T. Petition for Special Relief and Termination of Alimony Hearing, 1/3/20, at 4, 8, 10, 14, 36. The daughters testified that Husband was also declining mentally. *See id.* at 15-16, 32-33. Husband testified as well, again discussing all of the medical issues he had encountered over the past several years. *See id.* at 66-68. Eventually, Wife stipulated to the fact that Husband had significant health issues and could no longer work. *See id.* at 76.

Husband testified that he had worked as a real estate appraiser, but had retired in 2018. *See id.* at 62. He stated that he owned several rental properties, and he testified as to the estimated value of each of those properties, totaling more than $900,000. He also testified about his rental income, and that he received $27,084 annually in Social Security benefits. *See id*. at 81, 87. He explained that these were his only sources of income. *See id.* at 87.

Husband also stated that he had taken out a ten-year term life insurance policy naming Wife as the sole beneficiary, but he conceded that he stopped making payments on that policy after the ten years had lapsed. *See id*. at 69-71. He could not explain why he did not initially take out a whole life insurance policy, given that the 2004 order required him to maintain a life insurance

policy with Wife as the sole beneficiary until death. *See id.* at 96-97. Husband recounted that he called a life insurance agent in 2019, who advised him that the premium cost for a $250,000 whole life insurance policy would be $191,567.50. *See id*. at 91-92. He also stipulated that he had not made an alimony payment to Wife since August 2019. *See* N.T. Petition for Special Relief and Termination of Alimony Hearing, 6/10/20, at 71.

Following Husband's testimony, the matter was continued and a second hearing was finally held on June 10, 2020. Husband's long-time office manager, Janet Snyder, testified that she collected the rent from Husband's multiple rental properties and paid the expenses associated with those properties on Husband's behalf. *See id.* at 5, 7. Snyder testified about the specific amount of rent she collected from the rental properties as well as the specific mortgages on, and expenses paid for, those properties. *See id*. at 9, 12, 14, 17, 18, 19-26. In short, she testified that the income from the rental properties is minimal and some years even showed a loss. *See id*. at 29-30.

Following the hearing, the court directed the parties to file a post-hearing brief, and both Husband and Wife complied. On January 4, 2021, the trial court entered an order denying Husband's petition for special relief based on its determination that Husband had the ability to pay the alimony and to purchase a life insurance policy. Accordingly, the court ordered Husband to purchase a $250,000 life insurance policy with Wife as sole beneficiary and to make his alimony payments, including all past due payments, in accordance

with the 2004 order. It also directed that the mortgage recorded on August 8, 2019, would be released within 15 days of Husband providing proof that he had obtained life insurance as previously ordered. This timely appeal followed.

At the outset, we note that the arguments in Husband's brief are, to put it generously, difficult to follow. In his first claim, Husband argues that the trial court abused its discretion by not addressing whether the 2004 order was an order subject to modification under the Divorce Code or was a contractual agreement subject to defenses under contract law. Husband essentially argues that because the 2004 order did not incorporate or merge the parties' settlement agreement into their divorce decree, the 2004 order remained a contract subject to contract defenses. This claim fails for multiple reasons.

First, while Husband argues that the 2004 order was a contract subject to contract law defenses, his argument section on this issue fails to specifically identify what contract law defense he was invoking. He does indicate in his summary of the argument section, as well as later in his brief, that he was raising the affirmative defense of the inability to pay. *See* Appellant's Brief at 37, 61. However, a party's mere financial inability to comply with contract terms does not qualify for the contract defense of impossibility of performance. *See Luber v. Luber*, 614 A.2d 771, 774 (Pa. Super. 1992) (stating that the husband's assertion of his inability to pay in accordance with a settlement agreement did not qualify for a defense of impossibility of

performance and did not constitute a basis for discharging his obligations under the agreement).

In any event, as the trial court aptly pointed out, it simply does not matter whether the 2004 order was an order subject to modification under the Divorce Code or a contract subject to contract defenses because, either way, "Husband failed to establish that he is unable to pay." Trial Court Opinion and Order, 1/4/21, at 2. As explained by Wife:

> If the Order of July 20, 2004, containing the parties' agreement was a contract, then contract defenses were not proven because Husband had the ability to pay. If the aforementioned Order of July 20, 2004, was an order of the court, then Husband's request to modify that order could not be sustained because Husband has the ability to pay.

Appellee's Brief at 4-5.

We see no abuse of discretion or error in the court's conclusion that there was no need to definitively classify the 2004 order as either an order or a contract, given the court's finding that Husband did not, as he alleged, have the inability to pay. *See McKernan v. McKernan*, 135 A.3d 1116, 1118 (Pa. Super. 2016) (stating that this Court's review of an alimony order is limited to determining whether the trial court committed an error of law or abused its discretion).

However, Husband also appears to maintain, in effect, that there was a need for the court to decide the status of the 2004 order for enforceability purposes. According to Husband, if the 2004 order had been found to be a contractual agreement rather than an order under the Divorce Code, the trial

court would have been unable to impose sanctions under the Divorce Code, such as contempt or incarceration time for any such finding of contempt, for Husband's failure to pay alimony and to maintain a life insurance policy. To support his position, Husband relies heavily on **Sonder v. Sonder**, 549 A.2d 155, 175 (Pa. Super. 1988), which held that a marital agreement remains a contract unless it is merged into a divorce decree, and that absent such a merger, a marital agreement is not enforceable by contempt. This claim is meritless.

In the first place, as Wife points out, Husband did not appeal from the court's contempt orders but rather appealed from the court's order denying his petition for special relief and directing him to pay alimony and to purchase a life insurance policy. In any event, while it is true that **Sonder** held that a private marital agreement is not enforceable by contempt, it is also true that **Sonder** was superseded by statute. As this Court has explained:

> [The appellant] argues that the court lacked authority to use its equitable powers to enforce a private support agreement that was never merged in the parties' divorce decree. Appellant's [B]rief at 7 (citing **Sonder v. Sonder**, 378 Pa. Super. 474, 549 A.2d 155 (1988) (*en banc*), *superseded by statute as stated in* **Sinaiko [v. Sinaiko**, 664 A.2d 1005 (Pa. Super. 1995)]. Instead, only the law of contracts governed the parties' agreement, [the a]ppellant maintains. 'To jail a person for failing to pay on his private agreement.' the[a]ppellant posits, 'is prohibited ... .' We disagree.
>
> In **Sonder**, this Court sitting *en banc* addressed, *inter alia*, whether the trial court had erred when it held [the] husband in contempt and ordered him to pay a $10,000 purging condition to avoid commitment to jail for ninety days. The husband argued that incarceration was an inappropriate sanction for violating a

support agreement not merged with a divorce decree. This Court agreed, as the parties had rejected the benefit of Divorce Code provisions calling for enforcement through court orders and enabling procedures for contempt. ***Id***., 549 A.2d at 165.

> ***Sonder***, however, 'did not apply the 1988 amendments to the Divorce Code which specifically authorize the incarceration of a party for failure to comply with the terms of a separation agreement[,]' as the parties in ***Sonder*** executed their agreement prior to 1988 and were thus not bound by the terms of the amendments. ***Sinaiko***, 664 A.2d at 1012. In ***Sinaiko***, we explained [that] the amendments specifically authorize a court to enforce a subsequent agreement as if it had been an order of the court.

***Cunningham v. Cunningham***, 182 A.3d 464, 473 (Pa. Super. 2018).

To that end, the ***Sinaiko*** Court explained that Sections 3105(a) and 3502(e) of the Divorce Code specifically authorize the trial court to order commitment of the person in noncompliance of an order. Section 3105(a) provides:

> **§ 3105 Effect of agreement between parties**
>
> **(a) Enforcement**. --A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a). The ***Sinaiko*** Court then pointed out that Section 3502 of the Divorce Code allows for the incarceration of a person if found to be in contempt for failure to comply with the court order. ***See*** 23 Pa.C.S.A. § 3502(e)(6). It also specifically allows for a finding of contempt. ***See id***. at § 3502(e)(9); ***see also Gaster v. Gaster,*** 703 A.2d 513, 516 (Pa. Super. 1997)

(stating that Sections 3105(a) and 3502(e)(9) expressly permit parties to enforce agreements through the remedies available in the Divorce Code, which include the court's powers of contempt).

Husband does not allege that the 2004 order had any language explicitly prohibiting the court from utilizing a sanction under the Divorce Code. In fact, Husband acknowledges the change in the law but argues that both parties were represented by counsel at the time the 2004 order was entered and the order did not incorporate the agreement into the divorce decree. **See** Appellant's Brief at 27-28. This claim is specious and does not address the plain import of Section 3105(a). As such, based on **Cunningham** and **Sinaiko**, we agree with Wife that even if Husband's claim were properly before this Court, **Sonder** does not support a determination that the trial court was barred from holding Husband in contempt. In the end, Husband's first claim regarding whether the 2004 order is a contractual agreement or an order of the court offers him no basis for relief.

In his second and third claims, Husband argues that, regardless of whether the 2004 order is a contract or an order, the trial court erred by finding that he had the ability to pay the alimony to Wife and to purchase and maintain a life insurance policy for Wife. Husband argues that his age, his minimal income from social security and his rental properties, his physical health issues and his retirement all represent a substantial change in

circumstances and are evidence of his inability to pay Wife $2000 per month in alimony and to purchase a $250,000 life insurance policy.

Husband asserts that "all of this [is] undisputed by Wife." Appellant's Brief at 56. In fact, the trial court recorded the following findings of fact: Husband is 77 years old and "appropriately" retired, Husband has various medical issues, Husband's income from the rental properties is "minimal in some years and has also shown a minor loss in other years." Trial Court Opinion and Order, 1/4/21, at 3. Accordingly, Husband's reasons for arguing that the trial court erred in finding that he is able to pay the alimony and premium for the life insurance policy are all undisputed and in fact, are not even the reasons relied upon for the court's finding that Husband had the ability to pay. The trial court explained:

> [      ]Husband went to great lengths in the hearing and in his Brief to show that he is no longer able to be employed and that his rental properties are not producing income. He therefore concludes that he does not have the ability to purchase life insurance or pay alimony pursuant to [the 2004 order]. However, in addition to his social security income, Husband has approximately $700,000 of equity in rental properties that he has gone to great lengths to show that he does not make a profit from. In his Brief, Husband completely ignores the fact that he has $700,000 of equity that can be liquidated to pay alimony and to purchase a whole life policy. Since these rental properties do not provide Husband an income there is no reason not to liquidate said properties.[
>
> ]Furthermore, the Court is troubled by the fact that Husband created his own inability to purchase a whole life insurance policy. Prudence and common sense should have provided in 2004 that Husband purchase a whole life insurance policy at that time, instead of waiting until he is over 75 years old and in poor health. Husband's own failure to act prudently by purchasing a term life

> policy instead of a whole life policy should prevent Husband from now claiming an inability to pay. The Court will not find that Husband is unable to pay when said purported inability was voluntar[ily] created.

*Id.* at 3-4.

As this passage makes clear, the court determined that Husband was able to financially meet his obligations from the 2004 order based primarily on its finding that Husband had more than $700,000 in equity in rental properties. To that end, the court found that Husband owned various rental properties that were valued in excess of $900,000. *See id*. at 2. The court acknowledged that there were some mortgages on the properties, but that Husband's equity in the properties is approximately $700,000. *See id*. at 3.

Husband takes issue with these findings in his fourth and final claim on appeal. There, he argues that the court erroneously relied upon his testimony estimating the value of his properties because of his declining mental capacity. In effect, Husband, who is a retired real estate appraiser, argues his testimony regarding the value of his properties was not credible. The court addressed this argument in its Pa.R.A.P. 1925(a) opinion by pointing out that it had arrived at the valuation of the properties not only from Husband's testimony but from both Husband's and Wife's post-hearing briefs. *See* Trial Court Memorandum, 3/29/21, at 2 (unpaginated); Trial Court Opinion and Order, 1/4/21, at 2. Indeed, in his post-hearing memorandum of law in support of his petition for special relief, Husband listed the estimated values he gave for his rental properties in his testimony under his proposed findings of fact. *See*

Brief in Support of Defendant's Petition for Special Relief and Termination of Alimony, 9/3/20, at 4-5. He did not make any argument, such as the one he raises for the first time to this Court, challenging the credibility of his testimony or that the estimated values were inaccurate or unreliable. We fail to see any abuse of discretion or error on the part of the trial court in determining that Husband had the ability to pay alimony to Wife and to maintain a life insurance policy in accordance with the 2004 order, and ordering him to do so.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021